[Crim. No. 1499.   First Appellate District, Division Two.—December 4, 1928.]

THE PEOPLE, Respondent, v. STEVE LALOR, Appellant.

Joseph A. Brown and Carl E. Lindsay for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The district attorney filed an information against the defendant charging him with having committed grand theft. The defendant appeared, pleaded not guilty, and a trial was had before the trial court sitting with a jury; the jury returned a verdict of guilty, the defendant made a motion in arrest of judgment, the motion was denied; the defendant made a motion for a new trial, the motion was denied, and the defendant has appealed from the orders and the judgment.

■ The defendant contends that the information does not state a public offense. The charging part of the information is as follows: "The district attorney for the county of Fresno, state of California, hereby accuses Steve Lalor of the crime of a felony, towit: grand theft, in that the said Steve Lalor on or about the 9th day of November, 1927, at and in the said county of Fresno, and state of California, unlawfully took the property of one Margaret J. Adams, consisting of 400 shares of the stock of the 'Great Republic Life Insurance Company' of a value in excess of $200, lawful money of the United States." If we omit the words "consisting of 400 shares of the stock of the Great Republic Life Insurance Company," the information as written follows literally the provisions of section 484, section 487, and section 952 of the Penal Code, as those sections were amended in 1927. [Stats. 1927, pp. 1043, 1044, 1046.] By inserting the deleted phrase, an information which was otherwise sufficient was not made insufficient.

■ In the next place, the defendant contends that the evidence was insufficient to support the verdict and judgment, and insufficient to show that the defendant committed any offense. After stating some of the facts, the defendant clarifies his contention by saying "there is not a vestige of evidence as a matter of law connecting the defendant with the offense prior to its commission nor any sufficient evidence therein of guilt or criminal participation prior to the commission of the offense." As shown by the opening statement of the district attorney and by the evidence tendered by

him, it was at all times the theory of the prosecution that this defendant and a man sometimes called Fred Burdette, *alias* Walter C. Gillette, *alias* Herman Fink, did prior to November 4, 1927, form a conspiracy to obtain possession of the certificates of stock of the Great Republic Life Insurance Company (a corporation doing business in Los Angeles) and thereafter converting the certificates into cash; in carrying out this conspiracy Fred Burdette was to appear and interview the stockholder and make the representation that the Great Republic Life Insurance Company was about to amalgamate with the Philadelphia Life Insurance Company and that under the plan one share of stock in the amalgamated company would be issued for two shares of stock of the Great Republic Life Insurance Company, that to substantiate his representations Gillette carried what purported to be a letter written on the letter-head of the Great Republic Life Insurance Company and purporting to be signed by two of the well-known officials of that company; that after the conspirators had obtained the certificates then this defendant would negotiate the sale of the certificates and divide the proceeds; that in conducting these proceedings Burdette introduced himself as Walter C. Gillette and exhibited what purported to be the letter of authorization, but which in truth and in fact was entirely a forgery. Following out this theory of its case the prosecution called witnesses showing that Burdette and Lalor were together as early as November 4, 1927, that on the 7th they were in Fresno and this defendant registered himself and also registered Burdette under the name of Herman Fink at the Hotel Californian in Fresno, where they took rooms 511 and 512; that on the same date they called at the Wilbur ranch, where Burdette introduced himself as Gillette; that Mr. Wilbur was not at home and the two left, but that Burdette returned the next day; that on the 9th they called at the postoffice in Caruthers, a small town located in Fresno County; that at about half-past 1 in the afternoon Burdette entered the postoffice and inquired as to the residence of the prosecuting witness Margaret J. Adams; on being informed of the location of her residence he went outside and was afterward seen standing by the side of an automobile talking to a man who was seated in the automobile and who was identified as this defendant. At about 2 P. M. Burdette called on Mrs. Adams

and introduced himself as Walter C. Gillette, exhibited the letter above referred to, made the representation hereinbefore recited, and induced her to indorse and deliver her certificate of stock; that thereafter he delivered to her a receipt. While in the house he obtained from H. A. Adams his certificate in the same manner and executed to him a receipt. On the 11th this defendant and Burdette were in San Francisco. This defendant had the certificates in his possession and delivered the same to W. S. Hopkins with instructions to negotiate a sale and pay the proceeds to the defendant. On that same date Hopkins delivered the certificates to Martin Judge, Jr., & Company. On the next day that company delivered to Hopkins its check for $1,500, which Hopkins cashed and thereafter paid the moneys to this defendant in the defendant's room at the Hotel Plaza. On the same day this defendant paid Burdette out of said moneys the sum of $600. Thereafter, on the 15th, Martin Judge paid Hopkins $3,449.12 in the form of a check; Hopkins immediately cashed the check and on the same date at the same place paid the defendant the proceeds. Both Mr. and Mrs. Adams testified that they had never received anything for their respective certificates. Persons to whom Burdette had introduced himself under the name of Gillette were shown a picture of Burdette and they testified it was a picture of the man who called himself Gillette. Writings proved to have been made by the person claiming to be Gillette were shown to persons who stated they were written by Fred Burdette. We think it needs no argument to show that the evidence so introduced was sufficient to prove the offense alleged in the information and that the offense was committed as contended by the prosecution.

█ The defendant contends that the trial court erred in receiving evidence. We think it did. However, the error was not against the defendant but in the defendant's favor. Many items of evidence, each tending in some degree to prove a conspiracy, were erroneously rejected. For the purpose of proving the conspiracy the prosecution called Arthur M. Elburg, who resides at Cupertino, Santa Clara County, and attempted to prove that he was interviewed in November, 1927, by a man representing himself as Gillette, regarding stock held by the witness in the Great Republic Life Insurance Company. The defense immediately inter-

posed numerous objections and Mr. Elburg was not allowed to do much more than to give his name and address. The defendant now claims that the prosecution erred. The contention is without foundation. The error was on the part of the defense. A general treatment of the law on the subject is contained in 12 C. J., at page 633. Among other things, it is there said: "The fact of a conspiracy may be proved by any competent evidence. The conspiracy may of course be shown by direct evidence, and, it is apprehended should be so proved if this character of evidence is attainable. Direct evidence is, however, not indispensable. Circumstantial evidence is competent to prove conspiracy. Proof of the combination charged, it has been said, must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation. . . . The government has the right to show the whole history of the conspiracy from its commencement to its conclusion. And it is no objection that the evidence covers a great many transactions and extends over a long period of time, that it may show another crime. . . . Where the guilt of a party depends on the intent, purpose, or design with which an act is done, or on his guilty knowledge thereof, collateral facts in which he bore a principal part may be examined into for the purpose of establishing such guilty intent, design, purpose, or knowledge. It is sufficient that such collateral facts have some connection with each other as a part of the same plan or as induced by the same motive, and it is immaterial that they show the commission of other crimes. . . . " (See, also, *People* v. *Lawrence,* 143 Cal. 148 [68 L. R. A. 193, 76 Pac. 893] ; *People* v. *Moran,* 144 Cal. 48 [77 Pac. 777] ; *People* v. *Kizer,* 22 Cal. App. 10 [133 Pac. 516, 521, 134 Pac. 346].) The witness Bernice Gann testified regarding the call at the Wilbur place. Acting upon the motion of the defense, the court struck her testimony out. Later the court reversed its ruling. The defendant complains of the ruling reinstating the evidence. The ruling was clearly correct and the defendant was laboring under error when he made the motion to strike out.

▮ Finally, the defendant complains regarding the instructions given by the trial court. The court gave an instruction on the subject of circumstantial evidence. It is

contended the instruction was erroneous. The contention rests on the assumption that after each phrase the trial court should have inserted ''if any,'' and in failing to do so that the trial court assumed that every fact mentioned by the trial court had been proved. The trial court was not bound to continually insert ''if any.'' On the other hand, the duty of the trial court was to instruct clearly. It did so and committed no error. In this same connection the defendant claims that ''no statements of the defendant were in any way given in evidence in this case.'' Of course, that is not true. Statements made by this defendant were testified to by Verdieck, Stockird, Hopkins, and Du Bois.

■ The defendant calls to our attention that he requested the trial court to give some instructions which the trial court did not give, and assigns the omission as error. In this we think the defendant is mistaken. The first proposed instruction was ambiguous, unintelligible, and assumed that the sole act of the defendant was the act of selling the certificate of stock. Furthermore, it was a request that the court instruct on one specific piece of evidence.

■ The second proposed instruction was addressed to a set of facts which ignored the greater part of the case presented by the prosecution. The third and fourth proposed instructions, in so far as they are sound, were fully covered by instructions which were given. The fifth proposed instruction misquoted the record and was an incorrect statement of the law as stated in the authorities above cited. All of these requests were, for the reasons mentioned, properly refused.

Both the orders and judgment are affirmed.

Nourse, J., and Koford, P. J., concurred.