[Crim. No. 3692. First Dist., Div. Two. May 10, 1960.]

THE PEOPLE, Respondent, v. JAMES W. ANTOINE, Appellant.

Donald M. Cahen, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Miriam E. Wolff, Deputy Attorney General, for Respondent.

GOOD, J. pro tem.*—On January 12, 1959, the district attorney of the city and county of San Francisco filed an information accusing James W. Antoine of the crime of felony, to wit: violation of section 487 of the Penal Code of California (grand theft). Defendant was arraigned and given a medical

*Assigned by Chairman of Judicial Council.

examination, his counsel having expressed doubt as to defendant's ability to comprehend the situation because of amnesia. The court subsequently determined defendant to be sane. He pleaded not guilty, at the same time denying three prior felony convictions charged in an amendment to the information. However, prior to trial, and out of the presence of the jury, he admitted three priors, to wit: altering postal money orders, forgery, and fictitious checks. Following trial, the jury returned a verdict of guilty as charged. Defendant was duly arraigned for judgment and sentenced.

The evidence discloses the following facts:

On Monday, December 15, 1958, at approximately 5:30 p.m. appellant entered the fur department of Livingston Bros. Department Store, carrying a brief case. Shortly thereafter a saleslady, Mrs. Rose Auerbach, was showing him furs when the telephone rang, whereupon she left appellant unwatched for about two minutes. Upon her return he departed, avowedly to park his automobile. Appellant did not return.

Later that evening appellant appeared in a tavern carrying a large white gift box. He showed its contents, a fur piece, to various people there, explaining that he had received it as a Christmas bonus for outstanding salesmanship. Accompanying the fur were two tags, one showing a price of $395. He indicated that the fur was for sale, and a Mrs. June Warden took it home that night. When she attempted to return it to appellant on the following evening, he asked her if she couldn't sell it for him, and she again took it home with her.

Mrs. Warden, who was a saleslady at another department store, took the fur to work with her on the following day, Wednesday, and talked with one of her employer's detectives about it. The fur had a Livingston Bros. label and an inventory tag, and subsequent investigation led to the identification of the fur as belonging to that establishment. It had been the only one of its type in the Livingston stock. Mrs. Auerbach testified that an inventory check on the morning of December 15 had shown it to be present in the department at that time. She also remembered having actually seen it then.

On Thursday, December 18, 1958, Mrs. Warden returned to the above-mentioned tavern with the boxed fur, having previously arranged to meet appellant there. A Livingston Bros. security officer, Walter Craig, and two policemen had stationed themselves at vantage points in the tavern, and they arrested appellant as soon as he took the box from Mrs. Warden. At that time he explained that he had won the fur in a poker

game, although there is a conflict in the testimony as to what he said concerning when the game had occurred.

An expert testified to the morphological identity of certain hairs which he had found in the appellant's brief case with sample hairs from a stole which he had examined in Livingston Bros.' fur department, and which bore the same label appearing on the stole which was introduced in evidence. Mrs. Auerbach identified the fur as being the one which the inventory check had proved to be present in the store on the morning of December 15, 1958. The Livingston Bros. security officer, Mr. Craig, identified the fur in evidence as being Livingston stock and as the one which Mrs. Warden had turned over to him on Wednesday, December 17.

Appellant testified that he had obtained a fur similar but not identical to the one in evidence from a man named George as a pledge in a poker game on Sunday afternoon, December 14, 1958. He explained that he had given the man until 6 p.m. on the following day to redeem it. He stated that he had mentioned the fact that he had won the fur through his company to his landlady on Sunday night and had shown it to her husband later that same evening. However, the landlady could not remember when this had occurred, although she did recall his having mentioned that he had won the fur at a church whist party. Mrs. Warden testified that when she had first seen appellant on Monday, December 15, he had bragged about having just shown the fur to his landlady or her husband.

Appellant admitted having gone to Livingston Bros.' store on Monday afternoon, but explained that his purpose had been to learn what the fur's price was. He also admitted that while there he had stolen a price tag to affix to the wrap in order to enhance its value. However, Mrs. Auerbach testified that it had not come to her attention that any other price or inventory tags were missing at any time during the rest of that month, and Craig testified that only one of each is put on any single garment. Appellant also admitted the above-mentioned transactions with Mrs. Warden, although stating that she had originally taken the fur with the avowed purpose of exchanging it with a friend for a used automobile for appellant.

▪ Appellant's first contention is that the information was fatally defective in that it did not charge him with a public offense. The charging part reads:

"James W. Antoine is accused by the District Attorney of the City and County of San Francisco, State of California, by this information, of the crime of felony, to wit: VIOLATION

OF SECTION 487 OF THE PENAL CODE OF CALIFORNIA (GRAND THEFT), committed as follows: The said James W. Antoine on or about the 15th day of December, 1958, at the City and County of San Francisco, State of California, did unlawfully take the property of LIVINGSTON'S DEPARTMENT STORE consisting of a mink stole of a value in excess of $200.00.''

Appellant argues that section 487 of the Penal Code is a definition of grand theft, and says ''One cannot violate a definition.'' However, the information is substantially in the form suggested by section 951 of the Penal Code (form of indictment or information). The language used was approved by this court in *People* v. *Lalor*, 95 Cal.App. 242, 244 [272 P. 794].

As the Supreme Court pointed out in *People* v. *Ashley*, 42 Cal.2d 246, 258 [267 P.2d 271], the purpose behind the consolidation of larcenous crimes into the single crime of theft was to remove the technicalities previously existing in the pleading and proof of these crimes. ''Indictments and informations charging the crime of 'theft' can now simply allege an 'unlawful taking.' (Pen. Code, §§ 951, 952.)'' The information herein attacked, in addition to charging a violation of section 487, did just this. ''The sole purpose of an indictment or information is simply to inform the accused of the charge which he must meet at the trial (Pen. Code, § 952). . . . It is elementary that an appellant must not only show error but that such error prejudiced his substantial rights and militated against his receiving a fair trial. In the case at bar, appellant has not suggested how under any possible concept of the record he was in any way prejudiced by the form of the indictment herein.'' (*People* v. *Massey*, 151 Cal.App.2d 623 at 648-649 [312 P.2d 365].) That language is applicable to the instant case. The authorities cited by appellant do not indicate otherwise.

Appellant also attacks his conviction on the ground that the prosecution failed to connect him with the item charged to have been stolen. Thus, he claims insufficiency of the evidence as a matter of law to identify the particular fur as the stolen mink stole.

In addition to the evidence outlined above, Mr. Craig testified that the fur in evidence could be identified through the store's stock control system, which involves a price tag in triplicate, a department number, a manufacturing number, and a registration number. The Livingston Bros. fur department's stock control records pertaining to this fur were in-

troduced into evidence. Craig testified that the fur in evidence not only had a stock control number which appeared in those records, but that they showed it to be the only one of its type in stock.

As appellant indicates, after the fur was marked in evidence at a preliminary hearing its tags were replaced and it bore the replaced duplicate tags when admitted into evidence at the trial. However, it was stipulated at the preliminary hearing that the stole could be released to Livingston Bros. and photographs substituted in evidence. Photographs were accordingly taken with the original tags. Craig authenticated these photographs and they were received in evidence in the court below. Craig's testimony that the replaced tags were *duplicates* of the originals is not controverted. The other circumstances, including the expert testimony and the identification of the fur as the only one of its kind in Livingston's stock on the day of the theft, were sufficient to support the jury's finding of identity. ■ It is not the function of an appellate court to determine the weight of circumstantial evidence. Its duty is to decide only whether such evidence is sufficient to warrant an inference of guilt. (*People* v. *Smith,* 43 Cal.App.2d 110 [110 P.2d 472]; *People* v. *Adams,* 119 Cal.App.2d 445 [259 P.2d 56].) In sustaining a conviction of theft of two cases of whiskey from a drugstore, the court in *People* v. *Brooks,* 154 Cal.App.2d 631, 634-635 [316 P.2d 435], said ". . . [T]he employees of the drug store testified that certain dates appeared on the cartons containing the whiskey. These dates corresponded to dates found on the cartons in the possession of defendant . . . The trier of fact could thus readily infer that the whiskey found in the automobile with defendant was owned by the drug store and had been stolen by defendant."

The jury in the case at bar had considerably more substantial evidence from which to infer the necessary identification than did the trier of fact in Brooks. Their verdict determines the fact.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.