[Crim. No. 7870.   Second Dist., Div. Two.   Mar. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD LEE EDDINGTON, Defendant and Appellant.

John L. Carr for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Carlos F. Borja, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of violating section 504a of the Penal Code.* He has appealed.

The information charged that on or about January 10, 1961, defendant willfully and fraudulently removed, concealed and disposed of a hi-fidelity radio, phonograph and cabinet which was in defendant's possession under a written contract of purchase which had not been fulfilled; that defendant had concealed and disposed of said hi-fidelity set with the intent to injure and defraud the House of Sight and Sound and the California Bank.

In October 1960, defendant bought a hi-fidelity set from the House of Sight and Sound for $600. He made a $70 down payment with a Bankamericard and financed the balance through the California Bank. Salesman Holmes prepared invoice No. 3347 and a draft for $70 against the Bankamericard and a conditional sales contract with the California

---

*The section reads: "Every person who shall fraudulently remove, conceal or dispose of any goods, chattels or effects, leased or let to him by any instrument in writing, or any personal property or effects of another in his possession, under a contract of purchase not yet fulfilled, and any person in possession of such goods, chattels, or effects knowing them to be subject to such lease or contract of purchase who shall so remove, conceal or dispose of the same with intent to injure or defraud the lessor or owner thereof, is guilty of embezzlement."

Bank. Defendant gave instructions to deliver the set to his office at 8701 Sunland Boulevard, Apartment A, and not to deliver it to his home because the set was to be a surprise gift to his wife on their anniversary which was October 18. The set was delivered to defendant's office as per his instructions by an employee of the seller, named Wayman. Defendant told Wayman that the set would not remain at his office but would later be moved to his home.

Theodore M. Patterson, lending officer for the California Bank (Van Nuys branch) testified that no payment had been made by defendant on the conditional sales contract up to that time (April 28, 1961), even though the defendant had been contacted and demand for payment had been made upon him; that the bank therefore looked to the House of Sight and Sound to make good on the contract. In December 1960, the House of Sight and Sound sent their employee, Wayman, to locate the set. He discovered that defendant had moved out of the office to which the set had been delivered. Wayman attempted to locate the hi-fi at defendant's residence but was unable to find it there. On January 10, 1961, Wayman and Stanford K. Peabody, a vice president of the seller, contacted defendant at his home. Defendant told them, "I'm not going to pay for it" (the set); "I gave it to a friend." When asked how the hi-fi could be found, defendant replied, "That's up to you. You'll have to just find it yourself." Peabody testified that defendant had not been given permission to retain the set and that it had not been returned to the store.

Robert E. Ambrose, assistant cashier for the Bank of America at the Bankamericard Center in Pasadena, testified that no payment had ever been made by defendant on the $70 credit card charge.

Defendant admitted that he had bought the set as described in the documents that were in evidence for $600; that he took possession when it was delivered to his office in Sun Valley; that he did not pay the Bank of America charge of $70; that the first monthly payment was due on November 15, 1960; that on that date he moved from his office in Sun Valley to an office at 10526 Burbank Boulevard; that he did not make any payments to the seller nor did he make any arrangement for an extension of time with the California Bank; and that he did not tell the seller where the set was. When defendant was asked by the trial court where the set was stored, he replied that it was "in a shed on a lot" that he owned in

Sunland; ". . . There is no address. It's just a vacant half-acre lot that we own. It's on Clybourne Street." Defendant told the arresting officer, Riegel, that it was none of his business where the set was located and that it was up to the House of Sight and Sound to find it. In response to the inquiry, did he intend to pay for the set, defendant stated that he would pay for it "when he got around to it." Defendant asked the investigating officer, Guldner, if he was a repossessor for the seller. When asked whether he had anything to say regarding the charges made against him, defendant replied, "I don't believe that that's any of your business." Officer Guldner testified that there was no such address as 10526 Burbank Boulevard, the location to which defendant claimed to have moved his office on November 15.

Defendant took the stand in his own defense. He said that the reason he could not pay for the set was that the corporation in which he had an interest, known as Leco Equipment Rentals, Inc., went bankrupt when it did not get paid for the last job it did. However, upon cross-examination, defendant stated that he had not taken any action to collect for this last job and that the corporation had not filed bankruptcy proceedings. Defendant testified that he told Wayman and Peabody at the meeting of January 10, 1961, that the reason he could not pay for the set was because he did not have a job or the money to make the payments; and that they threatened to turn him over to the sheriff or marshal. This testimony was corroborated by a workman named Strunk who overheard the conversation.

Defendant questions the sufficiency of the evidence to find him guilty of theft by embezzlement. In sum, he argues that his acts were merely a frustration of repossession by the conditional seller rather than a concealment with intent to defraud.

The word "conceal" is defined by Webster's New International Dictionary, 2d edition: "To hide or withdraw from observation; to cover or keep from sight; to prevent the discovery of." This definition was quoted with approval in *People* v. *One 1940 Oldsmobile Club Coupe,* 80 Cal.App.2d 372, 376 [181 P.2d 950]. *People* v. *McGinnis,* 55 Cal.App.2d 931, 936 [132 P.2d 30], is in accord. In *Mitchell* v. *Locurto,* 79 Cal.App.2d 507 [179 P.2d 848], the court stated (p. 514) that: "The word 'conceal' pertains to affirmative action likely to prevent or intended to prevent knowledge of a fact. [Cita-

tions.] It has reference to some advantage to the concealing party or a disadvantage to some interested party from whom the fact is withheld.''

The evidence here shows that defendant admitted removing the hi-fi set from his office to another place on the very day that the first installment became due. Although defendant claimed that he moved the set to another office at 10526 Burbank Boulevard, Officer Guldner testified that he had investigated the matter during the course of the trial and that ''there is no such address.'' Also defendant told Wayman and Peabody that he had loaned or given the set to a friend. The record further discloses that although defendant was asked as to the whereabouts of the hi-fi set by an employee of the seller, an official of the seller and the arresting officer, he refused to reveal its location. Even when asked as to its location by the judge during the course of the trial, defendant merely stated that it was in a shed on a lot he owned on Clybourne Street in Sunland. He did not otherwise identify the place. Concealing the location of the set was an advantage (*Mitchell* v. *Locurto, supra*) to the defendant and certainly a definite disadvantage to the seller since it not only lost the set but also had to make good the money which it had received from the Bank of America as a down payment and from the California Bank which had discounted the original note made in its name.

In his brief defendant states ''There can be no argument but that the evidence shows a concealment by the defendant . . . However, we urge this Court not to consider concealment in the broadest sense.'' We see no reason for giving the term any meaning other or different from that given in Webster and approved by the decisions in this state. (*People* v. *One 1940 Oldsmobile Club Coupe; People* v. *McGinnis, supra.*) The jury was amply justified in concluding from the evidence that defendant's acts with relation to the hi-fi set amounted to concealment under Penal Code section 504a.

Defendant also argues that the evidence is insufficient to establish the intent to injure or defraud under section 504a. He argues that the testimony tends to prove larceny by trick and device (if anything), a crime with which he was not charged; that the evidence does not show an intent to defraud but only an intent to frustrate the conditional seller in his efforts to repossess the set.

To sustain a conviction of violating section 504a, Penal Code, there must be an intent to injure or defraud the

owner of the fraudulently removed, concealed or disposed of goods that were sold under a contract of purchase not yet fulfilled.

It is well established that intent to defraud may be inferred from the circumstances surrounding the transaction in question. (*People* v. *Weiss*, 123 Cal.App.2d 487, 491 [266 P.2d 924] ; *People* v. *Rush*, 172 Cal.App.2d 431, 435 [341 P.2d 788].) Bearing in mind that a reviewing court must assume in support of the verdict and judgment the existence of every fact which the trier of fact could have reasonably deduced from the evidence, it is clear from the testimony to which we have referred that there is sufficient evidence to justify the inference that defendant intended to defraud the seller of the hi-fi set. (*People* v. *Frankfort*, 114 Cal.App. 2d 680, 689 [251 P.2d 401].) The jury could reasonably have concluded that at the time defendant entered into the transaction for the purchase of the hi-fi set that he contemplated that his company would be paid in due course for a job which was then in process of completion and that his company would be financially able to continue in business, and that he would therefore be in a position to make the several payments as they fell due and that he intended to meet the obligations under the contract. However, it appears that defendant's company was not paid for the job in question and it immediately ran into financial difficulties and was not able to carry on its business. As a consequence defendant was unable to make the required payments on the set. The jury could reasonably infer from the defendant's acts and his refusal to tell either the employees of the seller or the investigating officer where the hi-fi set was located that he intended not only to conceal it but also to defraud the seller. The basic difficulty with defendant's argument on this phase of the case is that he would have us draw inferences contrary to those drawn by the trier of fact. Under firmly established principles, we are not at liberty to do this. (*People* v. *Gould*, 111 Cal.App.2d 1, 8 [243 P.2d 809] ; *People* v. *Weiss, supra.*)

Defendant finally argues that the court prejudicially erred in permitting Mr. Ambrose to testify that defendant had made no payment to the Bank of America on account of the initial down payment of $70 on the hi-fi set. This item of evidence was part of the overall transaction here under review and was relevant on the question of defendant's intent to defraud. In any event, any error in the admission of this

evidence cannot be regarded as prejudicial in view of the provisions of article VI, section 4½ of the Constitution.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.