442 P.2d 134

**The STATE of Arizona, Appellee,**

v.

**J. Carlos McCORMICK, Appellant.**

**No. 2 CA–CR 100.**

Court of Appeals of Arizona.

June 18, 1968.

Rehearing Denied July 23, 1968.
Review Granted Dec. 3, 1968.

578

Darrell F. Smith, Atty. Gen., Phoenix, William J. Schafer III, Pima County Atty., Lars Pedersen, Chief Deputy County Atty., Tucson, for appellee.

Lawrence P. D'Antonio, Tucson, for appellant.

HATHAWAY, Chief Judge.

This appeal presents for review the defendant's conviction as to each of eleven counts of grand theft. He was accused by indictment returned by a Pima County grand jury of stealing certain sums of money from Alianza, a fraternal society whose members are Spanish speaking people organized into numerous lodges. The defendant, who became associated with Alianza in the early 1950's became its Supreme President in May, 1962. The alleged thefts with which he was charged occurred subsequent thereto in the form of a number of checks issued by him or at his direction to various individuals and business entities.

On appeal, the defendant raises the following questions:

"1. Whether a defendant can be tried upon a void indictment returned by a defectively impaneled grand jury.

2. Whether a defendant can be convicted of theft by larceny upon proof of theft by embezzlement.

3. Whether a defendant can be convicted of theft by larceny when the State fails to offer any evidence on one or more elements of the crime.

4. Whether there is sufficient evidence to support the verdict.

5. Whether the trial court erred in charging or refusing to charge certain instructions * * *."

The defendant contends that the trial court erred in failing to quash the indictment which was "void because returned by a defectively impaneled grand jury." This claim of "voidness" is predicated on the decision of our Supreme Court in State v. Superior Court, etc., 102 Ariz. 388, 430 P.2d 408 (1967) which sustained the action of the Pima County superior court in discharging the Pima County grand jury because of a defect in its impanelment. Subsequently, however, the Supreme Court in State v. Superior Court, etc., 102 Ariz. 588, 435 P.2d 485 (1968) held that such defect was not jurisdictional, hence failure to timely move to quash the indictment would constitute a waiver of such defect.

The defendant did move to quash the indictment urging, inter alia, as grounds therefor the failure to inquire into the qualifications of the grand jurors (the defect which was considered by the Supreme Court to be grounds for discharge). No evidence in support thereof was attached to the motion nor was a hearing held thereon. The trial court, however, granted to the defendant an opportunity to file an amended motion to quash the indictment prior to a specified future date. No amended motion was filed and more than two months after the expiration of the allotted period the trial court, by minute entry, denied the original motion to quash.

The defendant had the burden of establishing the alleged defect in the jury impanelment, Lopez v. State, 158 Tex. Cr.R. 16, 252 S.W.2d 701 (1952), cert. denied, 344 U.S. 893, 73 S.Ct. 213, 97 L.Ed. 691 (1952); State v. Manney, 24 N.J. 571, 133 A.2d 313 (1957); United States v. Hoffa, D.C., 205 F.Supp. 710 (1962); United States v. Greenberg, D.C., 200 F. Supp. 382 (1961); United States v. Flynn, D.C., 103 F.Supp. 925 (1951), and since the motion was based on allegations of facts dehors the record in the criminal cause, it was incumbent upon him to present evidence in support of the allegations of his motion to quash. State v. Superior Court, etc., 7 Ariz.App. 170, 436 P.2d 948 (1968); State v. Pennick, 364 S.W.2d 556 (Mo.1963); State v. McIntosh, 333 S.W.2d

51 (Mo.1960); McDonald v. State, 379 S.W.2d 349 (Tex.Cr.App.1964); Bates v. State, 166 Tex.Cr.R. 177, 312 S.W.2d 675 (1958); United States v. Skidmore, 123 F.2d 604 (7th Cir. 1941); Cochran v. United States, 310 F.2d 585 (8th Cir. 1962); 27 Am.Jur. Indictments and Informations § 142; 42 C.J.S. Indictments and Informations § 214b(1). Therefore, nothing having been presented in support of the motion, it was properly denied. United States v. Perlstein, 120 F.2d 276 (3d Cir. 1941); Smith v. State of Mississippi, 162 U.S. 592, 16 S.Ct. 900, 40 L.Ed. 1082 (1896).[1]

The defendant's second contention is:

"A defendant cannot be convicted of theft by larceny upon proof of theft by embezzlement."

Count I of the indictment recited:

"The grand jurors of the County of Pima, in the name of the State of Arizona, and by its authority accuse J. Carlos McCormick of the crime of grand theft and charge that on or about the 3d day of July 1963, in Pima County, Arizona, and before the bringing of this indictment, the said J. Carlos McCormick, stole from Alianza money of a sum exceeding $100, all in violation of A.R.S., § 13–661, § 13–662, § 13–663 as amended and § 13–671."

The remaining counts are worded exactly the same with the exception of the date of the theft alleged. In response to the defendant's motion for a bill of particulars,

the State furnished the following information as to each count: (1) the exact amount of money allegedly stolen, (2) that each of the amounts indicated were checks drawn on Alianza accounts and (3) the names of the payees and/or the beneficiaries or possible recipients of the money.

The defendant contends that he may not be charged with one crime and then convicted thereof on proof of an entirely different offense. See State v. Singh, 4 Ariz.App. 273, 419 P.2d 403 (1966). In *Singh*, one count of the information charged the defendant with passing or uttering a supplemental escrow instruction to Dwayne Moore. At trial, the State proved that the aforesaid instrument was delivered to one Frank Donaldson rather than to Dwayne Moore. At the close of the State's case, a motion to amend the information to conform to this evidence was granted pursuant to Rule 145, Rules of Criminal Procedure, 17 A.R.S. On appeal, this court reversed, pointing out that notwithstanding Rule 145 allows an amendment to be made *to* the information, it does not allow an amended information to be substituted to charge a defendant with a different crime. We stated:

"A defendant is entitled to be charged with a specific offense in order that he may know the nature and extent of the accusation against him. One way of testing herein whether the defendant has been prejudiced by the amendment is to

---

1. It should be mentioned at this point that the State, prior to filing its brief, filed in this court a confession of error stating:

"The facts involved in this case, relating to the Pima County Grand Jury, are exactly the same as those found to nullify the action of the Grand Jury by the Arizona Supreme Court in State v. Superior Court, No. 8922–PR, [102 Ariz. 388, 430 P.2d 408], decided on July 19, 1967."

In some jurisdictions, it is the practice to reverse on a confession of error without further consideration while in others it is the practice to examine the record even though the error has been confessed. 24B C.J.S. Criminal Law §·1948

(3). In this jurisdiction, we follow the latter practice and do not consider ourselves bound by the confession of error. State v. Stewart, 3 Ariz.App. 178, 412 P.2d 860 (1966); State v. Rogers, 2 Ariz.App. 232, 407 P.2d 773 (1965). Since under the holding of State v. Superior Court, etc., 102 Ariz. 588, 435 P.2d 485 (1968) the indictment returned by the grand jury in this case was not void but merely voidable, and our review of the record of the proceedings in the trial court disclosed no error in the denial of the motion to quash, we declined to reverse on the confession of error and directed the State to file its answering brief.

ask whether or not upon an acquittal of the charge of passing a forged document to Dwayne Moore, the defendant could then be charged with forgery in relation to passing a forged document to Frank Donaldson. If there has been no jeopardy as to a charge of passing a forged document to Frank Donaldson, then we are dealing with two separate offenses, and the court may not grant the County Attorney's motion to change the nature of the charge against the defendant by allowing an amendment to the information. It is apparent in the instant case, that we have two separate and distinct crimes involved. One would be the passing or uttering of forged instruments to Dwayne Moore. The other would be the passing of forged instruments (even though they may be the same instruments) to Frank Donaldson. Under these circumstances, defendant was materially prejudiced by the amendment, and the judgment must be reversed as to Count II." 4 Ariz.App. at 277–278, 419 P.2d at 407.

*Accord*: Peterson v. Jacobson, 2 Ariz. App. 593, 411 P.2d 31 (1966).

The *Singh* holding is inapposite here. The defendant McCormick was charged with stealing money from Alianza. Had the State proved another offense such as a theft from another association or person, we might agree that the defendant had been prejudiced thereby in his defense on the merits.

In the trial court, as well as on appeal, the State relied on State v. Bradley, 3 Ariz.App. 70, 412 P.2d 67 (1966) to counter the defendant's motion to dismiss or, in the alternative, direct a verdict of acquittal as to all counts of the indictment. In *Bradley* the defendant was charged pursuant to A.R.S. §§ 13–661, 13–671 and 13–663 of grand theft, auto. This court held that, notwithstanding a defendant's lawful acquisition of possession, he could be convicted of the crime of theft.

■ The defendant's position is that the State was required to prove that he had committed larceny. We do not agree. The defendant was charged with grand theft in that he stole certain sums of money from Alianza. Rule 148, Rules of Criminal Procedure, provides the following form may be used to charge the offense of theft: "A.B. stole from C.D. one horse." As we recently pointed out, our Supreme Court has adopted a complete new set of rules for criminal procedure and the new "theft" statutes were intended to eliminate technical defenses. State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776, 782 (1968), review denied May 14, 1968.

■ A.R.S. § 13–662 evidences a legislative intent to eliminate the technicalities previously existing in the pleading and proof of larceny, embezzlement or ·stealing:

"Any law which refers to or mentions larceny, embezzlement or stealing shall be interpreted as if the word 'theft' were substituted therefor."

In California, whence we derived our "theft" statutes, it is uniformly held that it is unnecessary to specify in the accusatory pleading the *kind* of grand theft. People v. Martin, 153 Cal.App.2d 275, 314 P.2d 493 (1957); People v. Dimitrovich, 194 Cal.App.2d 710, 15 Cal.Rptr. 407 (1961); People v. Antoine, 180 Cal.App.2d 786, 4 Cal.Rptr. 589 (1960); People v. Riley, 217 Cal.App.2d 11, 31 Cal.Rptr. 404 (1963). A conviction of grand theft is supported by evidence that the defendant was guilty of embezzlement, larceny or obtaining · property by false pretenses. People v. Kovach, 197 Cal.App.2d 80, 16 Cal.Rptr. 876 (1961); People v. McManus, 180 Cal.App.2d 19, 4 Cal.Rptr. 642 (1960), and there is no material variance between a charge of grand theft in an indictment or information and proof of embezzlement. People v. Otterman, 154 Cal.App.2d 193, 316 P.2d 85 (1957); People v. Coe, 171 Cal.App.2d 786, 342 P.2d 43 (1959). Juries no longer need be concerned with the technical differences between the different types of theft and can return a general verdict of guilty if they find that an unlawful taking has been proved. People v.

Ashley, 42 Cal.2d 246, 267 P.2d 271 (1954), cert. denied, 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707 (1954).

■ Although a conviction of theft, based on a general verdict of guilty, can be sustained only where the evidence discloses the substantive elements of one of the consolidated offenses, People v. Darling, 230 Cal.App.2d 615, 41 Cal.Rptr. 219 (1964); People v. Ashley, supra, the prosecuting attorney is not required to elect, in advance of the proof, the theory upon which the prosecution is to proceed, whether larceny, false pretenses, or embezzlement. People v. Fewkes, 214 Cal. 142, 4 P.2d 538 (1931). As stated in *Fewkes,* supra:

> "These distinctions in the charge and proof obtained under the old practice, but are done away with in the new. They were eliminated, not only for the purpose of simplifying procedure, but also to relieve the courts of the necessity of drawing fine distinctions as to whether the particular crime charged had been proved, and the prosecution of charging in advance, at its peril, an offense which the evidence, because of such fine distinctions, might show not to exist, although the guilt of the defendant be manifest." 4 P.2d at 541.

■■ We hold, therefore, assuming the requisite elements of the specific offense are proven, that proof of either embezzlement, larceny, or false pretenses will sustain a conviction of *theft.* Although the defendant's contention that a conviction of larceny cannot be sustained when proof of one or more of the elements thereof is lacking is correct, People v. Ashley, supra, if the evidence will support a conviction of another kind of grand theft, failure to prove the elements of *larceny* is not fatal to the State's case. State v. Bradley, supra.

A.R.S. § 13–682(1), as amended, provides:

> "A person is guilty of theft by embezzlement who:
>
> "1. Is entrusted with, or has in his control, property for the use of any other person, and fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust the property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose."

■ The elements necessary to establish embezzlement are (1) a trust relation, (2) possession or control of property by virtue of the trust relation and (3) a fraudulent appropriation of the property to a use or purpose not in the due and lawful execution of the trust. Drake v. State of Arizona, 53 Ariz. 93, 85 P.2d 984 (1939).

The defendant states in his opening brief that "he had complete custody, control and possession of the Alianza bank accounts." A corporate resolution authorized him, as supreme president, and Laura Elias, secretary-treasurer, to jointly sign and execute checks and other items of the corporation and to endorse checks and other items payable to the organization. Another corporate resolution authorized another employee of Alianza to be the representative of the supreme president in his absence and to excute checks and other items of the corporation and to endorse checks and other items payable to the corporation. The record discloses that all of the decisions as to issuance and execution of checks were made by the defendant and the co-signatory exercised no discretion.

The supreme president under the General Laws of the Alianza effective at the time of his appointment was vested with authority to appoint a secretary-treasurer and to sign all checks authorized by the supreme lodge or the supreme executive council or checks for general administrative expenditures. He was also therein designated chairman and presiding officer of the finance committee. The finance committee, consisting of the president and two members of the executive council selected by the president, had the duty and power "to approve or disapprove all applications for loans made to the Society." Among the enumerated duties and powers of the secretary-treasurer was

582

that of signing all disbursement orders by the supreme president on the treasury.

After taking office as president during May 1962, the defendant appointed a finance committee which convened as a body only once during the defendant's tenure in office from May, 1962 to November, 1963. Although all loans made by Alianza were to be submitted form the finance committee's approval, none of the "loans" or "advances" for which the defendant directed issuance of the checks, which form the basis of these criminal charges, were submitted either to the finance committee or to the board of directors of Alianza. Prior to the defendant's assumption of the presidency, an established procedure had been followed by the organization as to mortgage loans, i. e., execution of all the documents necessary to effect the transaction and processing same through an escrow arrangement. This procedure was not followed by the defendant.

In July, 1963, a representative of the California Department of Insurance commenced an audit of the books and records of Alianza which lasted for a period of ten months. The defendant resigned in November, 1963. At a later date, he executed a promissory note payable to Alianza in the amount of $164,096 to be paid at the rate of $100 per month without interest.[2]

As to the checks which were subject of the various counts of the indictment, the evidence discloses the following. Count I was a check for $254 made payable to Barrows Furniture Company at the direction of the defendant. This check was part of the down payment on furniture ordered by the defendant for his father-in-law's home in Tucson in which his parents were living at the time. The secretary-treasurer testified that she was told by the defendant "as soon as I get back to the office I will reimburse you." No such "reimbursement" was made.

Counts II and III respectively concerned a $3,000 check and a $2,000 check made payable to the order of the defendant's parents. The voucher prepared with the issuance of these checks designated them as "advances on a mortgage loan" on property located at 4321 Bryn Mawr, Tucson, Arizona, the home of defendant's father-in-law. The $3,000 check was cashed on the date of its issuance, $1,000 being deposited into the defendant's personal account and the remaining $2,000 converted to a cashier's check made payable to the defendant. The $2,000 check was endorsed in blank by the named payees and cashed by the defendant in Bethesda, Maryland. No documents were executed with regard to this purported "mortgage loan" nor was any file set up pertaining to it. The "loan" was not submitted to the finance committee for approval.

Count IV involves a check in the sum of $3,510.21 made payable to the defendant. The voucher indicates that it was a personal draw to be reimbursed. The check was paid to O'Malley Lumber Company for materials furnished for the construction of the Pan American Radio Corporation's radio broadcasting station in Tucson in which the defendant was the majority stockholder. Alianza had no interest in this corporation and the "advance" was never submitted for approval or repaid.

Counts V and VI, checks in the amounts of $708.75 and $150, respectively, were issued at the defendant's direction as "advances" to him. The voucher on the $150 item indicates that it was to be reimbursed. Although the defendant testified that the money was expended for expenses incurred while attending to Alianza business, he rendered no accounting of these alleged expenses and Alianza was not reimbursed.

Counts VII, VIII and IX involved three checks made payable to one J. Lawrence Greene in the amounts of $5,135, $3,450, and $15,549.98 respectively. On the same day the $5,135 check was issued, it was deposited in the Pan American Radio Corporation's account and, immediately thereafter, $1,135 was drawn out of the latter

2. At the rate of $100 per month this note should be fully paid in 136 years and 9 months.

account and deposited in the defendant's personal account. Prior to the deposit of the $5,135, the funds in the Pan American Radio Corporation's account were not sufficient to sustain a $1,135 withdrawal. As to the $3,450 check, the same sequence of events occurred except that $3,400 was withdrawn from the radio corporation's account and deposited in the defendant's personal account. As to the third check, the defendant received a "loan" of $12,500 from Mr. Greene. The correlative vouchers for these checks indicate that the $5,135 was an "advance on mortgage loan," the $3,450 check was "total proceeds—mortgage loan, J. Lawrence Greene, Jr.," and the $15,549.98 check was "disbursement of proceeds on J. Lawrence Greene, Jr. mortgage loan." No documents were executed with regard to this "mortgage loan" nor was it ever submitted for approval as required by the General Laws of Alianza.

Count X concerned four checks in the sums of $41,378.15, $11,500, $2,000 and $4,000. These checks were made payable to the defendant's cousin, Olivia Corral, the vouchers designating them as "mortgage loans" relating to real property in Bethesda, Maryland on which a residence was located which the defendant and his family occupied. The first check went for payment of the Maryland property and the other three checks, endorsed in blank by the payee, went to the defendant. This "mortgage loan" transaction was never submitted to the finance committee for approval. In November, 1963, the insurance department auditor, after numerous requests, did obtain from the defendant a file pertaining to the Maryland property transaction. The file contained a deed of trust to Alianza signed by Olivia Corral and witnessed by the defendant. This document, however, was neither acknowledged nor recorded. Furthermore, only loans up to ⅔ of appraised valuation were permissible under Alianza regulations and one appraisal indicates that the property was worth only $40,500. Therefore, a loan in excess of $27,000 would have been unauthorized.

Count XI involves a series of checks totaling approximately $100,000, issued between September, 1962 and July 12, 1963, payable to the order of either Oscar Stevens or Oscar Stevens and his wife. These checks were issued at the direction of the defendant and the Alianza check vouchers indicate that they were "construction money loans." The proceeds from these checks were used to build the radio station, lease radio equipment, and pay salaries of the Pan American Radio Corporation's employees. Mr. Stevens was a stockholder in the corporation and supervised the construction project. The defendant owned approximately 68 percent of the corporate stock and the balance was owned by his wife, his father, and several other individuals, including the Stevenses. Disbursements were made in accordance with the defendant's instructions and the record indicates that part of the money went from the radio corporation account to the personal account of the defendant. According to the defendant, he was reimbursing himself for prior advances to the corporation. This "construction money loan" was never presented to nor approved by Alianza.

The foregoing . evidence presented by the State supports the jury's finding the defendant guilty of the eleven counts of grand theft. As supreme president of Alianza, he occupied a fiduciary relationship to the organization. As a consequence of such relationship, he obtained control of Alianza's funds on deposit in Valley National Bank of Arizona. Actual possession of the money was not essential —it was sufficient that it was under the defendant's control in the sense that it was under his direction or management. People v. Knott, 15 Cal.2d 628, 104 P.2d 33, 128 A.L.R. 1367 (1940).

The defendant, relying on State v. Tauscher, 227 Or. 1, 360 P.2d 764, 88 A.L.R.2d 674 (1961), contends that his drawing checks on Alianza's bank account cannot constitute theft. We decline to accept the nitpicking distinctions resorted to by the Oregon court.

**584**

More acceptable to us is the reasoning of the California decision of People v. Schmidt, 147 Cal.App.2d 222, 305 P.2d 215 (1957), holding that funds on deposit in the bank which could be paid out by checks signed by a corporate officer were sufficiently in his control to render him liable for embezzlement. The court pointed out that it mattered not that the checks were made payable to a third person payee and that no cash was handed over the counter to the defendant and that he derived no personal benefit therefrom. Accord: State v. Johnson, 109 Kan. 239, 199 P. 104 (1921); State v. Lockie, 43 Idaho 580, 253 P. 618 (1927); Bartley v. State, 53 Neb. 310, 73 N.W. 744 (1898); State v. Krug, 12 Wash. 288, 41 P. 126 (1895), appeal dismissed, 164 U.S. 704, 17 S.Ct. 995, 41 L.Ed. 1183 (1896); State v. Lomax, 322 Mo. 86, 14 S.W.2d 436 (1929).

 It is unimportant whether the property embezzled was converted to the defendant's own use or to the use of another—it is the misapplication of the entrusted funds which is prohibited. Hoffman v. State, 164 Neb. 679, 83 N.W.2d 357 (1957); State v. Niehoff, 395 S.W.2d 174 (Mo. 1965); Switzer v. State, 213 Tenn. 671, 378 S.W.2d 760 (1964).

 The defendant contends that any intent to steal was negatived by the fact that he made no attempt to conceal his actions in writing the checks. Concealment, however, is not an element of the crime of embezzlement. Sasser v. State, Okl.Cr.App., 309 P.2d 1090 (1957). A.R.S. § 13–687 provides:

> "A. Upon any prosecution for theft by embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable."

 A mere showing that the property was appropriated openly and avowedly, without more, is not a sufficient defense. People v. Talbot, 220 Cal. 3, 28 P.2d 1057 (1934).

 The defendant contends that "there is simply no evidence from which reasonable men could infer that the defendant intended to steal when he wrote or authorized the writing of the various checks." We agree that a criminal intent is a necessary element of embezzlement. State v. Scofield, supra. The use of the word "fraudulently" in A.R.S. § 13–682 indicates this requirement. People v. Swenson, 127 Cal.App.2d 658, 274 P.2d 229 (1954). As we pointed out in State v. Scofield, supra, the intent necessary to constitute the crime of embezzlement is not the same as that required for larceny, i. e., an intent to *permanently* deprive the owner of his property. The requisite element of embezzlement is an intent to deprive the owner of his property and appropriate it. People v. Eddington, 201 Cal.App.2d 574, 20 Cal. Rptr. 122 (1962); 29A C.J.S. Embezzlement § 12a. The offense is complete when the entrusted funds are diverted from the trust purpose and an intent to restore such funds at a later time is no defense. People v. Parker, 235 Cal.App.2d 100, 44 Cal.Rptr. 909 (1965); A.R.S. § 13–685.

 Intent being a state of mind, proof of intent generally must be circumstantial in nature. State v. Hernandez, 7 Ariz.App. 200, 437 P.2d 952 (1968). The requisite intent may be inferred from the circumstances of the defendant's acts, People v. Eddington, supra, such as a defendant's voluntary acts in depriving the entrustor of his property, People v. Riggins, 13 Ill.2d 134, 148 N.E.2d 450 (1958) or taking large sums of money without approval, contrary to established practice. People v. Williams, 145 Cal.App.2d 163, 302 P.2d 393 (1956). The defendant places much reliance on the fact that the check vouchers indicated that the checks were written as "advances" or "mortgage loans." Criminal liability, however, cannot be avoided by the mere use of a label. People v. Colton, 92 Cal.App.2d 704, 207 P.2d 890 (1949).

 From the evidence presented by the State, the jury could reasonably find (1)

that a trust relation existed between the defendant and Alianza, (2) that the defendant obtained control of Alianza's money on deposit in the bank by virtue of the trust, and (3) that the defendant breached his trust by the fraudulent appropriation of the monies to unauthorized uses or purposes.

The defendant claims that the trial court erred in giving or refusing to give certain instructions. Defendant's requested instruction No. 3, in part, stated:

"Therefore, the Defendant must be acquitted if you find that he did not steal money from Alianza *even though he may have stolen checks or the bank account of Alianza.*"

(Emphasis supplied)

The trial court declined to give the underlined portion. Defendant's instruction No. 4 reads:

"In fact, in Arizona our theft statute under which the Defendant is charged does not make it a crime to steal another person's bank account."

We find no error in the trial court's refusal to so instruct since, as we have previously indicated, the drawing of checks on the bank account of Alianza for an unauthorized purpose would support a conviction of theft by embezzlement.

The trial court refused to instruct:

"If you find that the defendant lawfully obtained custody and control of Alianza's money, then he cannot be guilty of theft. The reason is because theft requires an unlawful taking. In other words, if you find that the defendant came into possession of Alianza's money lawfully and at some later time decided to fraudulently convert the money to his own use he cannot be guilty of theft, although he may be guilty of some other crime. It would follow that you must acquit him since the only charge against him is theft."

The defendant also challenges the trial court's inclusion in its definition of theft the language of A.R.S. § 13–682(1). For the reasons hereinabove discussed with regard to the all-inclusive nature of a theft charge, we find no merit in the defendant's complaint.

The trial court refused the following two requested instructions of the defendant:

"Every taking by one person of the personal property of another without his consent is not theft even though the property was taken without right or claim of right and for the purpose of appropriating it to the use of the taker. There must, in addition, be the felonious intent to steal."

And:

"If you find that the defendant took the money of Alianza under a color of right or excuse you must find that he did not have the intent to steal Alianza's money."

The trial court fully instructed the jury that one of the requisite elements of theft was "a specific intent to steal." As to the second requested instruction, we find that its contents were adequately covered by another instruction which included reference to lack of "color of right or excuse" as bearing upon the intent to steal.[3]

The court refused to instruct, at defendant's request, that no inference could be drawn from the fact that the defendant had failed to call witnesses if those witnesses were equally available to the State. The defendant objected to the refusal to so charge for the stated reason that "the evidence is that missing witnesses were equally available to the defendant and the State." There being no such evidence of "equal availability," as claimed by the defendant, the instruction was incorrect in this respect. The trial court was not required to reword the instruction, O'Rielly Motor Company v. Rich, 3 Ariz.App. 21, 411 P.2d 194 (1966),

---

3. The court instructed:
 "Now the intent to steal * * * means that the defendant has the intent to deprive * * * without color of right or excuse for the act * * *."

and the trial court adequately instructed the jury that neither party was required to call as witnesses all persons who were either present at or who might have had knowledge of the matters involved in the trial.

The following defense instruction was refused:

"To warrant a conviction for theft the circumstantial evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence."

■ The trial judge correctly refused to give the above-quoted instruction as it does not correctly state the law. A correct statement is found in State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965):

" * * * to warrant a conviction based *solely* upon circumstantial evidence, the evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. State v. Tigue, 95 Ariz. 45, 47, 386 P.2d 402." (Emphasis supplied) 99 Ariz. at 3, 405 P.2d at 886.

The rule of *Bearden* has been recently reaffirmed in State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968).

■ Where the prosecution relies exclusively upon circumstantial evidence, a trial court has a duty, sua sponte, to give the Hodge's Rule instruction. State v. Wood, 7 Ariz.App. 22, 435 P.2d 857 (1968); State v. Woody, 7 Ariz.App. 26, 435 P.2d 861 (1968). But where, as here, the evidence was not all circumstantial and the jury was adequately instructed on burden of proof and the jurors' duty when evidence is susceptible of two reasonable conclusions, one pointing to guilt and the other pointing to innocence, there was no error in failing to give a limiting instruction. Thomas v. United States, 363 F.2d 159 (9th Cir. 1966). Finding no error in the proceedings below

and the evidence sufficient to sustain the convictions, the judgment of conviction as to each count is affirmed.

■ Although generally matters raised for the first time in a reply brief are not considered by an appellate court, Miller v. Boeger, 1 Ariz.App. 554, 405 P.2d 573 (1965); Kenyon v. Kenyon, 5 Ariz.App. 267, 425 P.2d 578 (1967), we feel constrained to briefly comment thereon. The defendant urges this court, in reviewing the trial court's denial of his motion to quash the indictment, to take judicial notice of the fact that the grand jury was improperly impaneled. This we decline to do since the scope of our review is limited to the record on appeal. Swansea Properties, Inc. v. Hedrick, 3 Ariz.App. 594, 416 P.2d 1015 (1966); Winch v. Fong, 7 Ariz. App. 526, 441 P.2d 561 (filed May 29, 1968).

The defendant has also expressed an objection which appears to be a challenge to the potential validity of any decision of this court in this appeal. The objection is predicated on the fact that a member of the Court of Appeals initially disqualified himself from participating in this appeal and then subsequently revoked the disqualification. We deem it unnecessary to consider the effect thereof on the proceedings in this court [4] since the challenged judge did not participate in the determination of this appeal on the merits.

ROBERT O. ROYLSTON and JACK G. MARKS, Superior Court Judges, concur.

NOTE: Judges JOHN F. MOLLOY and HERBERT F. KRUCKER having requested that they be relieved from consideration of this matter, Judges ROBERT O. ROYLSTON and JACK G. MARKS were called to sit in their stead and participate in the determination of this decision.

4. It is questionable whether such objection is timely after defendant's counsel appeared in this court to argue motions

subsequent to the revocation of the disqualification without raising the question.