## STATE vs. MADALINE W. L. CURTIN.

1. WITNESSES—COMPETENCY—OBLIGATION OF OATH.

   A prosecuting witness, who, in answer to questions by the court, replied that he believed in "an overruling intelligence," "in the solemnity of an oath," and in the Bible, was qualified to take an oath.

2. EMBEZZLEMENT—DISTINGUISHED FROM "LARCENY".

   "Embezzlement" is a fraudulent appropriation of another's property by a person to whom it is intrusted, or into whose hands it has lawfully come and differs from "larceny", in that the original taking of the property is lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the taking.

3. EMBEZZLEMENT—EMBEZZLEMENT BY AGENT—QUESTION FOR JURY—DEMAND AND REFUSAL.

   In a prosecution, under *Rev. Code*, § 942, for embezzlement by an agent, *held*, on the evidence, that it was for the jury to say whether the prosecuting witness, after his demand for and the agent's refusal of the property in another state, was willing, and impliedly consented, that the agent should retain possession in this state as agent.

4. EMBEZZLEMENT—DEMAND AND REFUSAL—OFFENSE.

   In such prosecution, and upon a finding that the prosecuting witness was willing, and impliedly consented, that the agent should retain possession of securities as agent in a county of this state there might be a conversion in such county.

5. EMBEZZLEMENT—AGENT—ELEMENTS OF OFFENSE—STATUTE.

   To convict, under *Rev. Code*, § 942, for embezzlement by agent, the jury must find that the defendant was at the time of the alleged embezzlement an agent, or acting in that capacity, and that he converted the property, or some part of it.

6. EMBEZZLEMENT—AGENT—POSSESSION OR CUSTODY—CONVERSION.

   In such prosecution, a conversion would be shown if the agent, after acquiring possession of the property, had sold or disposed of it, or attempted to do so, without the owner's consent, or if he refused to deliver it to the owner on request, and retained it in his possession against the owner's consent, though there would be no conversion from the mere fact that he kept the property in his possession after bringing it from another state to the owner here, even though the owner did not ask him to keep it, and did not expressly consent to his keeping it.

7. EMBEZZLEMENT—AGENT—POSSESSION OR CUSTODY.

   In such prosecution, there would be no embezzlement, if the property alleged to have been embezzled came into the possession of the agent lawfully, so that an agent could be convicted of embezzling securities as agent if the principal, when he executed the power of attorney pursuant to which the agent went to another state and obtained the securities, had sufficient mind to know what he was doing, and was not so under the agent's influence and control as to be unable to exercise his own will, or if the agent obtained possession of the property by persuasion or entreaty, provided the owner had sufficient mind to know what he was doing.

8. CRIMINAL LAW—EVIDENCE—PRESUMPTION—MENTAL CAPACITY.

   The law presumes that a person has sufficient mind to understand what he is doing, until the contrary is shown.

*(October 12, 1914.)*

Statement.

PENNEWILL, C. J., and CONRAD, J., sitting.

*Josiah O. Wolcott*, Attorney General, and *Armon D. Chaytor, Jr.*, Deputy Attorney General, for the state.

*Levin Irving Handy* and *Wilbur L. Adams* for the prisoner.

Court of General Sessions, New Castle County, September Term, 1914.

Madaline W. L. Curtin was indicted for embezzlement as agent. Verdict, not guilty.

INDICTMENT (No. 33, May Term, 1914).

At the trial, Edward I. Ripley, the prosecuting witness, was challenged by counsel for the accused on information that he did not believe in the Bible or in the existence of a Supreme Being. In answer to questions propounded to him by Chief Justice PENNEWILL, he replied that he believed "in an overruling intelligence," "in the solemnity of an oath," "and in the Bible."

PENNEWILL, C. J.:—[1] We think the witness is qualified to take an oath.

Upon being sworn, Ripley testified, in substance, that he had certain stocks and bonds in a vault of the Exchange Trust Company in Boston; that while in poor health and in a dazed condition he executed a power of attorney before a notary in Philadelphia, authorizing the accused to go to Boston and procure the stocks and bonds in question from the Trust Company, with the understanding that he would still have control of the same.

Ripley further testified that the accused had previously impressed upon his mind that he had been guilty of some misdemeanor; that the police officers were after him; that some one was after his property; that these things induced him to execute the power of attorney; that the accused went to Boston and in a couple of days thereafter returned to Philadelphia, bringing the said stocks and bonds with her, and showed them to him in his room; that he was not sure that she had all of them, but he saw some of the envelopes containing some of them with his handwriting upon the same; that the prisoner refused to give them to

him; that at the prisoner's suggestion, he came to Wilmington with her and went to a boarding house in Wilmington, where she left him and went to Washington; that shortly thereafter she returned to him and finding him in the dining room talking to the boarding mistress she upbraided him for leaving his room and invited him to take a walk; that they took a walk, and he walked across the street to an officer and told him that the prisoner had stolen his property; that thereupon the prisoner ran down the street and disappeared and he did not see her again until he saw her in the dock at the trial; and that he had never recovered his stocks and bonds.

The prisoner denied that she had embezzled any of the property in question, but testified that she was engaged to marry Ripley; that she had been acquainted with him for eleven years, and had lived with him at different places for several years; that she had attended him and cared for him during his illness; that he had given her five thousand five hundred dollars worth of stocks and bonds in payment for personal services and to reimburse her for having used her name in a fraudulent transaction in which he was concerned; that she had performed valuable services in his behalf in shielding him from prosecution; and that none of the stocks and bonds had been converted by her, but were in the hands of her lawyer in Washington, where they had remained during her incarceration.

The questions of law presented appear in the charge to the jury.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The prisoner is charged in this case with the embezzlement of certain property of Edward I. Ripley consisting of bonds and shares of stock.

There is a statute of this state—*Rev. Code* of 1893, p. 942—which provides:

"That every cashier, servant, agent, or clerk to any person, or to any body corporate, or being employed for the purpose, or in the capacity of a cashier, servant, agent, or clerk, by any person or body corporate, who shall embezzle, fraudulently abstract, or misapply any money, goods, bill, note, bond, check, evidence of debt, or other valuable security, or effects, which,

or any part whereof, shall be delivered to, or received, or taken into possession by him, or to which he has access for, or in the name, or on account of his master, or employer," shall be deemed guilty of a misdemeanor.

[2] Embezzlement is a fraudulent appropriation of another's property by a person to whom it is intrusted or into whose hands it has lawfully come. It differs from larceny in that the original taking of the property was lawful, or with the consent of the owner. In larceny the felonious intent must have existed at the time of the taking.

The court are asked in behalf of the defendant to instruct you to return a verdict of not guilty, because, there having been a demand by Ripley for the securities in Philadelphia before they came to Wilmington and refusal to deliver, there could be no further conversion or embezzlement of the same in this county.

We do not say that when a conversion is once distinctly proved the crime is complete, and that there cannot be another conversion at another time and place that will constitute embezzlement. We express no opinion on that question.

[3, 4] But even though there was a demand and refusal in Philadelphia, if their friendly relations continued as before, they continued to live together, their conduct towards one another was unchanged, and Ripley did not ask again for the securities till he made the alleged demand in Wilmington, then the question would be whether or not such facts and circumstances showed that notwithstanding the demand and refusal in Philadelphia, Ripley was willing and impliedly consented that the prisoner should retain posession of the securities for him as his agent.

If the jury believe that Ripley was willing, and by his subsequent conduct consented, to the retention of the securities by the prisoner after his demand and refusal in Philadelphia, then we say that there might be a conversion in this county.

[5] There are certain things which it is necessary for the state to prove in order to convict the prisoner.

You must be satisfied that the prisoner at the time of the alleged embezzlement in this county was the agent of Ripley, or acting in that capacity. You must also be satisfied from the evidence that the prisoner converted in this county the property

mentioned in the indictment or some part of it. It is not necessary to show that she converted all of the securities she is charged with embezzling for if you are convinced beyond a reasonable doubt that she converted in this county even one of them she would be guilty.

Counsel for the prisoner insist that there has been no conversion of the securities by the prisoner in this state.

We instruct you that it must be shown that the securities or a part of them have been converted in this county as charged in the indictment before the prisoner can be found guilty.

[6] It is not easy to explain to you just what the law means by conversion. If the prisoner after acquiring possession of the bonds had sold or disposed of the same, or had even attempted to do so without the consent of the owner, that act would undoubtedly have been a conversion in law. If she had in this county refused to deliver them to the owner after being requested by him to do so, and retained them in her possession against the consent of the owner, that likewise would be a conversion. But the mere fact that she kept the bonds in her possession after bringing them from Boston to the owner here would not constitute a conversion of them in law, even though the owner did not ask her to keep them, and did not expressly consent to her keeping them.

If you believe the owner was willing not only that the prisoner should go to the Trust Company in Boston and get the securities and bring them to him, but also keep them in her possession after bringing them here, and that she did nothing more than that, she would not be guilty of embezzlement because there was no conversion.

[7] There can be no embezzlement if the property alleged to have been embezzled came into the possession of the prisoner unlawfully. If the original taking or possession of the property was unlawful the offense might be larceny but could not be embezzlement. The prisoner, therefore, cannot be convicted unless you are satisfied that the securities came to her lawfully. If, at the time of executing the power of attorney in pursuance of which the prisoner went to the Trust Company in Boston and obtained the bonds and stock certificates, Ripley had sufficient

mind to know what he was doing, and was not so under the influence and control of the prisoner as to be unable to exercise his own will, the prisoner obtained possession of the property lawfully and might be guilty of embezzlement. And she might be guilty if she obtained possession of the property by persuasion or entreaty provided the owner had sufficient mind to appreciate the nature of the business and to know what he was doing, for in such case she would have acquired the property lawfully. But if Ripley at the time he executed the power of attorney had not sufficient mind to enable him to know what he was doing, and because of that fact the prisoner knowingly, improperly and wrongfully influenced him to execute the said power of attorney in order to get possession of the securities, then her possession of them was unlawful and she cannot be convicted of embezzlement.

And so we say that, if you believe from the testimony in this case beyond a reasonable doubt that the prisoner obtained possession of the securities lawfully and afterwards converted the same or any of them in this county as charged in the indictment, your verdict should be guilty.

But if you do not so believe, or if you believe that she obtained possession of them unlawfully, no matter whether she converted them or not, your verdict should be not guilty.

And again, if you believe Ripley had given the securities to the prisoner by a certain paper writing which is in evidence, and further believe that he had at the time sufficient mind to know what he was doing, your verdict should be not guilty, for in that case the securities belonged to the prisoner and she had a right to retain possession of them and convert them as she pleased.

So, gentlemen, perhaps the most important question for you to determine is whether or not Ripley had sufficient mind to know what he was doing when he executed the power of attorney and also the paper writing purporting to give the securities to the prisoner.

[8] The law presumes that a person has sufficient mind to understand what he is doing until the contrary is shown.

Verdict, not guilty.