The STATE of Delaware

v.

Sidney J. CLARK.

Superior Court of Delaware.

New Castle.

Sept. 19, 1969.

John G. Mulford, Deputy Atty. Gen., and Francis A. Reardon, State Prosecutor, Wilmington, for plaintiff.

James M. Tunnell, Jr., and Paul P. Welsh, Wilmington, for defendant.

## OPINION

MESSICK, Judge.

In September of 1968 defendant tendered a letter of resignation from the Bar to the Chief Justice of the Delaware Supreme Court. At that time the Chief Justice reported that possible shortages of clients' funds were involved. Defendant was later disbarred, having filed no exceptions to the report of the Supreme Court's Censor Com-

mittee. The Censor Committee report, spelling out the charges against defendant in some detail was made available to the press with the consent of the Supreme Court. Subsequently, defendant was indicted on six counts of embezzlement.

All of the above facts were the subject of widespread newspaper publicity throughout the state. Defendant has moved that the actions be dismissed, or, alternatively, that the indictments be quashed, on the grounds that pre-trial publicity has foreclosed the possibility of a fair trial in Delaware.

Defendant relies heavily upon the case of Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). In *Rideau* the public was exposed to defendant's televised confession. In holding that it was error to have denied a motion for change of venue in the face of such prejudice, the Court stated:

"* * * we do not hesitate to hold, without pausing to examine a particularized transcript of the voir dire examination of the members of the jury, that due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised interview."

The *Rideau* case stands for the proposition that prejudicial pre-trial publicity can be so great as to amount to a sort of prejudice per se which the safeguards of the voir dire system of juror selection are presumed incapable of remedying. In such situations the defendant need not await the voir dire to see whether an impartial or fair jury can be drawn. Since the prejudice is presumed, the defendant is at once entitled to relief.

Pre-trial publicity must be highly prejudicial, indeed, to amount to prejudice per se. The facts in the case at bar clearly fall short of amounting to such prejudice. Here the defendant exercised his constitutional right to remain silent at the disbarment hearing and filed no exceptions to the Censor Committee report. In *Rideau* the public was exposed to the fact and substance of a confession by defendant. Mere silence

or refusal to take exception is not a confession and can hardly have as conclusive prejudicial effect as a confession.

In the final analysis, it is the nature of the publicity rather than its sheer volume, its quality rather than its quantity, that determines whether one's right to a fair trial has been infringed upon. Silverthorne v. United States, 400 F.2d 627, 631 (9th Cir. 1968). In *Rideau* there was a confession; here there was not. The nature of the prejudice was quite different and certainly less in degree here than in *Rideau* which, for the foregoing reasons, is not controlling here.[1]

Defendant contends that the source of prejudicial publicity is a factor in determining whether to grant relief therefrom, citing Delaney v. United States, 199 F.2d 107 (1st Cir. 1952). Since the source of the publicity in this case was the Chief Justice and the Court itself, the publicity is even more damaging in its air of authoritativeness and finality than was the case in *Delaney* and, therefore, the relief sought ought to be granted.

*Delaney* held that it was error to deny a motion for continuance in the face of nationwide publicity arising out of a Congressional investigation. The source of the publicity is a factor in assessing force or weight of the prejudice. As has been stated previously, this is not a case of prejudice per se. Were it such a case, the extreme remedy of dismissing or quashing the indictments might be appropriate,[2] particularly where less extreme remedies such as change of venue[3] or continuance[4] would

be unavailable or unavailing. However, since it is not such a case, and since other less extreme remedies may be available to defendant, a motion to dismiss at this stage, though it may be considered, seems inappropriate. *Delaney* did not hold that dismissal of an indictment is a necessary or even appropriate remedy when the state has been the source of prejudicial information. Certainly, in a case amounting to less than prejudice per se, dismissal at this stage seems inappropriate regardless of the source of the prejudicial publicity.

Defendant contends that when an attorney is disbarred by the state's highest court and the fact thereof and the grounds therefor are made public, he cannot be fairly tried on criminal charges stemming from the very matters that were the basis for the disbarment.

Defendant's argument rests on the premise that when a disbarment occurs, the grounds for which are made public, and criminal charges are later lodged based upon similar grounds, the public will assume that the disbarment amounted to an adjudication of defendant's guilt by the state's highest court. It is true that people may make that assumption, but that does not mean that under no circumstances can a fair trial be conducted or a fair jury drawn. In short, that the grounds for the disbarment were made public, and by the Supreme Court itself, is of little consequence once the fact of disbarment and the fact of a subsequent criminal charge is revealed. That the Supreme Court was the source of the information concerning the basis for the disbarment adds little to the

---

1. The State argues that *Rideau* involved publicity at trial and for that reason is not controlling here. Cases primarily involving publicity and lack of safeguards at trial, such as Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), often have little direct bearing on cases primarily involving pre-trial publicity. To that extent the State's argument is well taken and defendant's reliance on *Sheppard* is misplaced. However, *Rideau* was a case of pre-trial publicity, not a case of publicity at trial. The State's conclusion, namely, that *Rideau* is not controlling, is correct, but

it is correct for the reasons stated above and not for the reason argued by the State.

2. See 38 F.R.D. 435 (1965).

3. A change of venue might be unavailing in this case based on the authority of Parson v. State, 222 A.2d 326 (Del.Sup. Ct.1966).

4. Defendant has not requested a continuance and has given no compelling reason why a continuance would not be helpful in this case.

prejudice attendant to reading of a criminal charge with knowledge of the fact of an antecedent disbarment. As has been stated, that prejudice, not amounting to prejudice per se, cannot be grounds for dismissing or quashing the indictments at this stage. The prejudice may be fatal in fact, but that can only be determined upon the voir dire and not here as a matter of law. United States v. Corallo, 284 F.Supp. 240 (D.C.1968).

Under defendant's view, the only way defendant could have avoided being fatally prejudiced appears to be to have had the very fact of disbarment concealed at the outset. Since such concealment would seem to be neither possible nor desirable, is that to mean that no one who is disbarred can ever be tried on charges stemming from matters that were subject of the disbarment? Such a result is hardly a necessary consequence of revealing the fact of a disbarment or, in addition, of revealing the grounds therefor.

The case of Sheppard v. Maxwell, 384 U.S. 33, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), is illustrative of the nature of prejudicial publicity. As previously stated, *Sheppard* is primarily concerned with the failure of the court to take precautions at trial to protect the jurors from the contagion of prejudicial publicity. However, it is not authority for what constitutes pretrial publicity of such prejudice as to warrant dismissal of an indictment.

Finally, defendant contends that because the grand jury was subject to prejudicial newspaper publicity and allegedly inadmissible evidence, the indictments must be dismissed.

 Challenges to an indictment because of matters occurring before the grand jury are allowed for varying reasons in different states. However, Delaware allows only limited challenge to the grand jury proceedings under Criminal Rule 6 (b), Del.C.Ann., State v. Winsett, 200 A. 2d. 692 (Del.Super.Ct.1964). Thus, neither the prejudice of a grand juror nor the admission before the grand jury of evidence which would be inadmissible at trial is grounds for quashing the indictment in Delaware. Defendant cites Criminal Rule 6 (e) which permits disclosure of grand jury matters "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." He argues that the quoted language indicates that there may be grounds for dismissing an indictment other than under Criminal Rule 6 (b). All that can be said is that the quoted language of Criminal Rule 6 (e) was in force when the Court decided State v. Winsett and was presumably considered by the Court in that case. There appears to be no compelling reason for modifying the holding in State v. Winsett with respect to the grounds for challenging a grand jury.

Defendant's motion is denied.

It is so ordered.