ROBERT J. COOKE *v.* STATE OF MARYLAND

[No. 416, September Term, 1969.]

*Decided April 7, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert J. Cooke* pro se.

*Donald Needle, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, T. Bry-
an McIntire, State's Attorney for Carroll County,* and
*J. Robert Johnson, Assistant State's Attorney for Car-
roll County,* on the brief, for appellee.

PER CURIAM.

On 27 November 1968 the Grand Jury for Carroll
County returned an indictment against Robert J. Cooke
(appellant) charging under the 1st count thereof that on
31 August 1967 he "did feloniously embezzle from Laura
Louise Shipley, Executrix of the Estate of Minnie E.
Bussard, a check in the amount of $11,314.31" in viola-
tion of Md. Code, Art. 27, § 129. He waived trial by jury
and went to trial in the Circuit Court for Carroll County
on pleas of (1) "not guilty by reason of insanity at the
time of the alleged commission of the crime"; (2) "not
guilty by reason of insanity at the present time"; and
(3) "not guilty." The verdicts were that he was sane at
the time of the commission of the offense, that he was

sane at the time of the trial and that he was guilty of the offense charged in the 1st count.

Appellant first contends that the evidence was not sufficient to support a finding, beyond a reasonable doubt, that he was sane at the time of the commission of the offense. He had been examined by the staff at Clifton T. Perkins State Hospital and the report of the examination, under date of 24 March 1969, was admitted in evidence. It included the following:

"It was also the medical staff's unanimous opinion that Mr. Cooke did not suffer from a mental disease or defect at the time of the alleged offenses such as to cause him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

Dr. Robert Howard Sauer, Staff Psychiatrist at the Hospital testified: "It was my opinion that Mr. Cooke was not suffering from a mental disease or defect of such severity as to cause him to lack substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law."

On this evidence we cannot say that the court as the trier of fact was clearly erroneous in determining that appellant was sane at the time of the commission of the alleged offense. Md. Rule 1086. It was the court's function to resolve conflicting evidence on the issue and the weight of the evidence was a matter for it. See *Brown v. State*, 8 Md. App. 462; *Strawderman v. State*, 4 Md. App. 689; Code, Art. 59, § 9 (a). The matters urged by appellant go only to the weight of the evidence. We hold that the evidence, in law, was sufficient to support the verdict that appellant was sane at the time of the commission of the alleged offense.

Appellant also contends that the evidence was not sufficient to sustain the conviction. It appears that there was entered in evidence by stipulation that George S. Bussard died on 25 September 1962 and Minnie E. Bussard, his wife, died 8 January 1967; that appellant was the attorney of record for the Estate of George S. Bussard and

that a First and Final Administration Account in said Estate was filed in the Orphans' Court for Carroll County on 16 December 1963; that the Will of Minnie E. Bussard was admitted to probate in said Court on 19 January 1967; that Laura Louise Shipley, accompanied by appellant, went to the Orphans' Court for Carroll County and qualified as Executrix of said Will and that the appearance of appellant was entered as attorney for the Estate on that date; that no inventories or accountings of any type in said Estate were thereafter filed; that 54 shares of American Telephone and Telegraph Company stock were registered in the name of Minnie E. Bussard and 168 shares of stock in said Company were registered in the names of George S. Bussard and Minnie E. Bussard, his wife, as tenants by the entireties; that on 8 August 1967 a person representing herself to be Minnie E. Bussard opened an account in the Harrisburg, Pennsylvania office of Hallowell, Sulzberger, Jenks and Company, stock brokers, and delivered to the Company the 222 shares of American Telephone and Telegraph Company stock; that on 17 August the same person personally delivered to the brokerage firm a death certificate of George S. Bussard, Letters of Administration on his Estate and a copy of the First and Final Administration Account filed therein; that she directed the 222 shares of stock to be sold at the market price; that said shares were sold for a total price of $11,314.31; that a check in that amount, dated 29 August 1967 was issued by the brokerage firm, payable to the order of Minnie E. Bussard and mailed to "Mrs. Minnie E. Bussard, Liberty Road, Route 2, Sykesville, Maryland, 21784"; that on 2 August 1968 the brokerage firm received a telegram as sent by Laura E. Shipley stating that Minnie E. Bussard died 7 January 1967 and that the stock was not to be sold; that on 31 August 1967 appellant presented the check issued by the brokerage firm to the National Central, National Bank and Trust Company of Central Pennsylvania, Hanover, Pennsylvania; that the check had prior thereto been endorsed "Minnie E. Bussard"; that appellant endorsed

the check "R. J. Cooke" and directed that $7000 of the total amount of $11,314.31 be applied to reduce his $10,-000 personal loan at said bank and that the balance of $4,314.31 be deposited in a checking account in the name of "Robert J. Cooke, Attorney"; that this was done; that from 31 August 1967 through 14 November 1967, 17 checks in a total amount of $4,314.31 were drawn by appellant against the funds in said checking account and spent for various purposes, none of which were related to the Estate of Minnie E. Bussard; that a handwriting expert identified the signature "R. J. Cooke" endorsed on the check issued by the brokerage firm as that of appellant and that the signature "Minnie E. Bussard" appearing as an endorsement on that check, on an account card signed when the account was opened in the brokerage firm on 8 August 1967, and on an Affidavit of Non-residence, and on stock assignments connected with the sale of the 222 shares of stock were written by a Nadine Bernice Frock.

Laura Shipley testified that she lived with her mother, Minnie E. Bussard, before her mother died on 8 January 1967 and that the mailing address was Liberty Road, Route 2, Sykesville, Maryland. She said that she had delivered the stock to appellant after her mother's death. Thereafter she and her son discussed the disposition of the stock with appellant and told him it was not to be sold but was to be transferred to the names of her and her son. In August of 1967 appellant telephoned her and said he had to have a letter which was at the post office addressed to her mother "to straighten out something. So I called the post office and gave them permission to give him the letter. And I understood, the way I understood it, he was to bring the—when he got finished what he had to do, he was to come back with the letter and let me know what the letter was." He did not do so. In September she received a letter from the brokerage firm informing her that the stock had been sold. She called appellant and he told her he would like to have the letter. He got the letter from her and she asked him why the stock

had been sold. "[H]e told me the man at the broker's had misunderstood him to say transact instead of transfer and that beings I had been in the hospital before he didn't want to worry me, he thought he could straighten it out before that. And he took the letter and said that he'd take care of it and see that it was taken care of. So I depended on him to do so." In December when she contacted him again he told her someone had ransacked his office and stole the stock. She attempted on numerous occasions thereafter to get in touch with him but was not successful. She finally reached him in January 1968 and he told her he would buy the stock back "if he couldn't do any better." He gave her a receipt reading that he had received 138 shares of American Telephone and Telegraph Company stock from her and her son.[1] She "called him over and over and over and over again. Once in a while he'd answer me and then return my calls and other times he'd just ignore me * * * [H]e kept saying he was taking care of it." She sent the telegram to the brokerage firm when she got a letter from them stating she owed some $14 to A. T. & T. for dividends they had paid.[2] She learned that 222 shares had been sold. She never received any A. T. & T. stock from appellant or money from him in payment of the stock. On cross-examination she said that she was depending on appellant "to settle the estate and take care of the business deal. I don't know anything about business. That's what you have lawyers for."

Julia Green, employed at the Sykesville Post Office, testified that appellant called her "to ask if he could pick up a letter that was addressed to Mrs. Bussard and I told him that he could with Mrs. Shipley's permission." Mrs. Shipley called her and told her that the letter was

---

1. Mrs. Shipley was under the impression that 138 shares were all that her mother had.

2. It appeared that this was because 27 shares had not been transferred before the record date of 1 September 1967. The brokerage firm requested her to endorse the dividend check she would receive and send it to it so it could pay the party claiming from them.

coming from Pennsylvania and that she could give it to appellant. She gave him the letter. Later Mrs. Shipley again called her. "Well she went into her personal problems and she told me that she wanted to know my opinion of Mr. Cooke, if I knew him, and she told me that she had let him pick the letter up and that it had a check in which was the settlement of her mother's estate and she went on to tell me about her mother's death and quite lengthy about her problems and then she thanked me for listening and told me she appreciated it." Mrs. Shipley also told her she did not want anyone to pick up her mail after that. Appellant had never received from Mrs. Green a letter of any kind other than the one in question. On inquiry by the court Mrs. Green was not positive Mrs. Shipley used the word "check" but did say the letter was in settlement of her mother's estate. "The exact words I don't remember but I do know that when she told me I was sure that it was money."

Appellant was convicted of the crime proscribed by Code, Art. 27, § 129. It provides, *inter alia*:

> "Whosoever being a * * * agent * * * to any person * * * or being employed * * * in the capacity of a * * * agent * * * by any person * * * shall fraudulently embezzle any money * * * [or] check * * * which, or any part whereof, shall be delivered to or received, or taken into possession by him, for or in the name or on account of his * * * employer, shall be deemed to have feloniously stolen the same from his * * * employer, although such money * * * [or] check * * * was not received into the possession of such * * * employer, otherwise than by the actual possession of his * * * agent * * *."

Appellant suggests that it was the stock he embezzled and not the check as charged and argues, in the alternative, that even if it was the check which was the subject of the defalcation, he did not embezzle it because he ob-

tained it by "trick or artifice" and that it was not entrusted or delivered to him. He implies that he obtained the check by larceny since he stole it from the owner, it being in her constructive possession in the post office. We do not agree. Regardless of what other crimes he may have committed with respect to the stock, he also embezzled the check as charged. The manner in which he obtained the check did not constitute the crime of larceny. The letter containing the check was delivered to him, received by him and taken into possession by him upon the express direction of the owner. We think it clear that the evidence was sufficient to show that Mrs. Shipley intended that the letter and whatever was enclosed therein be entrusted to him, and that she intended to yield possession to him. And, it was, at the least, a rational inference that the letter contained the check in question. "The statute does not require that the embezzled property be entrusted to the accused directly by the master or employer; it may be entrusted by another person on his behalf." *Gordon v. State,* 5 Md. App. 291, 303. We observe that an attorney at law is an agent within the meaning of the statute. *Dick v. State,* 107 Md. 11, 23; *Gordon v. State, supra,* at 304. Here there was evidence, direct or provided by rational inference therefrom, on which the court could have found beyond a reasonable doubt that appellant was employed as an agent by Laura Louise Shipley, Executrix of the Estate of Minnie E. Bussard, that in such capacity he received the check for or in the name of his employer, and that he thereafter fraudulently embezzled it. This met the requirements of the statute. *Gordon v. State, supra,* at 303. We cannot say that the court was clearly erroneous in its judgment on the evidence. Md. Rule 1086. We hold that the evidence, in law, was sufficient to sustain the conviction.

*Judgment affirmed; costs to be*
*paid by appellant.*