**Sidney J. CLARK, Defendant Below, Appellant,**

**v.**

**The STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Jan. 14, 1972.

James M. Tunnell, Jr. and Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant below, appellant.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

Appellant, Sidney J. Clark, has appealed his conviction of embezzlement after a jury trial in the Superior Court of New Castle County. The questions presented on appeal necessitate an elaboration of appellant's circumstances.

Appellant was admitted to the Bar of this state in 1957. In 1961, he was appointed a Judge of the Municipal Court of Wilmington. Appellant became well known throughout the state for this achievement. In 1966, appellant resigned from his judgeship and returned to full-time private practice. In 1968, appellant attempted to resign as a member of the Bar of the State of Delaware. The attempted resignation was ultimately refused by this Court, and appellant was disbarred for mishandling of his clients' funds. In Re Clark, Del. Supr., 250 A.2d 505.

In March of 1969, a Grand Jury returned the indictment [1] upon which this case is based, charging a violation of 11 Del.C. § 635, as amended 50 Laws of Del., Ch. 299 § 1 [2] (hereafter "new" § 635).

Because of his aforementioned status in the community, appellant's disbarment proceedings and this subsequent indictment were the subject of coverage by the Wilmington newspapers.[3] Prior to trial, appellant moved for a change of venue or quashing of the indictment, containing that he could not get a fair trial due to the extent of the adverse publicity. The lower

---

1. "The Grand Jury charges SIDNEY J. CLARK with the following offense, a Felony:

"Embezzlement, in violation of Title 11, Section 635 of the Delaware Code of 1953.

"SIDNEY J. CLARK on divers dates between the 7th day of April, 1967, and the 28th day of February, 1968, in the County of New Castle, being the Attorney for Allen Roy, Sr., Guardian of Allen Roy, Jr., and, as such attorney, being charged with the responsibility of handling legal matters for Allen Roy, Sr., Guardian of Allen Roy, Jr., in the United States District Court of Delaware and the Orphans Court of Kent County, State of Delaware, did receive a sum of $61,340.00 from the United States District Court of Delaware and Allen Roy, Sr. From that sum, Sidney J. Clark, Attorney for Allen Roy, Sr., Guardian, was to make certain disbursements and deposit the sum of $56,626.55 with the Delaware Trust Company for the benefit of Allen Roy, Jr., pursuant to an Order of the Orphans Court of Kent County of the State of Delaware. That Sidney J. Clark did fail to make said deposit and did willfully, unlawfully and feloniously embezzle, retain and appropriate to his own use the sum of $56,626.55, knowing the same to belong to Allen Roy, Sr., Guardian, with intent to defraud Allen Roy, Sr., Guardian.

2. 50 Laws of Del., Ch. 299 § 1 provides:

"Section 1. § 635, Title 11, Delaware Code is amended to read as follows:

"§ 635. Embezzlement of property valued at One Hundred Dollars ($100.00) or more and knowingly receiving same

"Whoever embezzles money or other property which may be the subject of larceny, to the value of One Hundred Dollars ($100.00) or more; or whoever receives, conceals, or retains the same knowing it to have been embezzled, is guilty of a felony and shall be fined in such amount or imprisoned for such term, or both, as the Court, in its discretion, may determine."

3. Discussed in part V herein.

Court denied his motion; State v. Clark, Del.Super., 257 A.2d 388 (1969).

Additionally, appellant moved to quash the indictment on the grounds that the statute under which he was charged was unconstitutional. In an unreported letter opinion, dated June 9, 1970, the trial Court concurred in this contention and declared the statute unconstitutional as too vague. The Court further ruled, however, that the new provision had only been an attempt to amend the old, and as the amendment was void, the original provision (hereinafter "old" § 635) was still effective and appellant could be tried thereunder.[4] The State filed an appeal of this ruling, but the appeal was dismissed as untimely. State v. Clark, Del.Supr., 270 A.2d 371 (1970).

Trial was ultimately held December 14, 15 and 16, 1970. During the jury selection, counsel was permitted to make *voir dire* examination of the panel. Some of the questions were directed to the jurors' prior knowledge of the case, based on reports in the local press. Of the 19 jurors questioned, one was discharged by the court for cause; appellant exercised six preemptory challenges, and the State challenged none. Of the twelve who determined the verdict, one juror remembered reading about the matter, four had a "vague recollection of reading about the matter," and seven had no knowledge at all prior to the day of trial.

At trial, the State introduced evidence which showed that the appellant had successfully represented an injured minor in civil litigation in the U. S. District Court of Delaware in 1967–8. After payment of attorneys' fees, costs, and other bills, appellant had deposited a check for $61,340.22, drawn on the U. S. District Court, payable to appellant's client's father, as guardian, in his "attorney's" checking account in a New Castle County bank. Appellant was then under a duty, after payment of certain outstanding medical and witness expenses, to create a trust account with the funds in a local bank in the name of his minor client. The State's evidence showed that this trust was never created, and that at the end of 1968, the "attorney's" account contained only $.30.

Appellant took the stand and, under thorough questioning by his attorney, recreated the events that led to the defalcation in question. Just prior to resigning from the bench in 1966, appellant began having medical problems. A series of operations in 1966 and 1967 relieved his difficulty, but during the same period, his wife was diagnosed as terminally ill. Until her death in April of 1968, appellant spent large sums of money in an attempt to cure his wife, or at least alleviate her predicament. This medical indebtedness was in addition to already existing debts of thirty or forty thousand dollars.

Shortly after the death of his wife, facing extensive indebtedness, appellant decided to "take a chance." The money which had been recently deposited from the aforementioned litigation was used to finance a gambling venture to Las Vegas in an attempt to win enough to pay all of his outstanding debts. The venture wholly failed.

Appellant then attempted to borrow $100,000 from several wealthy people he knew. Promises of loans totalling $70,000, contingent on arranging for the full $100,000, were elicited, but the full amount was never obtained and the loan was never consummated.

Throughout his uncontradicted testimony, appellant strenuously contended that he at all times intended to repay the money, that he never altered any books or forged any names, and that when questioned about the matter, he gave full, truthful answers.

---

4. Prior to its change in 1955, 11 Del.C. § 635 provided:

"§ 635. Embezzlement or conversion by bailee of property valued at $100 or more

"Whoever, being a bailee of money or other property which may be the subject of larceny, to the value of $100 or more, embezzles or fraudulently converts the same to his own use, shall be fined in such amount or imprisoned for such term, or both, as the court, in its discretion, may determine."

Appellant's defense at trial was based on the theory that the State failed to prove the necessary intent element of embezzlement as required by Delaware law. Jury prayers which reflected his interpretation of this defense were submitted by him, but they were refused by the trial Judge.

Additional facts will appear as necessary.

### I.

Appellant contends that "old" § 635 under which he was convicted was not a valid law at the time of the defalcation because the "new" § 635—later declared unconstitutional by the trial Court—appeared "on the face of the statute books" of this State. which allowed application of "old" § 635 for purposes of his prosecution is *"ex post facto* judicial legislating" and that he was deprived of constitutional notice of the statute at the time of his acts. Reliance is placed on Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

In the *Bouie* case, the Supreme Court struck down the conviction of a sit-down demonstrator where the conviction was based on a narrowly-worded—and previously narrowly-construed—criminal trespass statute. In sustaining the conviction, the South Carolina Court reinterpreted the statute broadly. The Supreme Court ruled that, in view of the prior narrow construction of the statute, the defendant could not be said to have had notice that the acts he did were forbidden. The facts of *Bouie* make it inapposite here. The problem here presented is not the application of a statute to particular facts; but rather, the rules that are applied to determine orderly statutory succession. Furthermore the trial Court did not apply a unique or new principle of law.

At least 40 years ago, Delaware recognized the rule that a prior statute's validity continues where there has been an attempted change by an invalid amendment. See Wilmington Trust Co. v. Highfield, Del.Supr., 4 W.W.Harr. 394, 153 A. 864 (1931). If "new" § 635 is unconstitutional—a question we do not pass upon [5]—then it has been invalid from its inception and has never amended "old" § 635. "An unconstitutional act is not a law; . . .; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County, 118 U.S. 425 at 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886).

Extensive research reveals no prohibition against the application of this rule of law in a criminal case. See Commonwealth v. O'Harrah, 262 S.W.2d 385 (Ky., 1953); Sawyer v. State, 100 Fla.1603, 132 So. 188 (1931). Application of a rule such as this appears to be solely a matter of state law. Cf. Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941).

Appellant's objection, therefore, is without merit. The test for statutory notice " . . . is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." United States v. Harriss, 347 U.S. 612 at 617, 74 S.Ct. 808 at 812, 98 L. Ed. 989 (1954). As a citizen of this state, appellant is presumed to know the statutes and existing rules of law of this state, and we find no evidence which would excuse ignorance of their status. Compare Long v. State, Del.Supr., 5 Terry 262, 65 A.2d 489 (1949).

### II.

Appellant next argues even if "old" § 635 is viable, he cannot be prosecuted un-

5. This Court may decline review of this for two reasons: (1) the State has not filed a cross-appeal—see the ending comment of this Court in State v. Clark, 270 A.2d 371, *supra*—; and (2) the ruling, if it is erroneous, benefits the appellant because violation of "old" § 635 is only a misdemeanor; violation of "new" § 635 is a felony. Fns. 1 & 3, *supra.* The indictment, the evidence, and the charge were sufficient to justify a conviction under either the "old" or the "new" section.

der it because: (1) he, as an attorney handling a client's funds, is a fiduciary, not a bailee; and (2) the specific section—11 Del.C. § 642—dealing with embezzlement by fiduciaries, was repealed by 50 Laws of Del. § 299.

A review of the statutes shows the inaccuracy of these contentions. "Old" § 635 was a general provision and violation was a misdemeanor. 11 Del.C. § 642 dealt with a particular type of bailment—fiduciaries—and made defalcation by them a felony. This appears to reflect the Legislature's determination at that time that dishonesty by these particular bailees should be more harshly punished due to the nature of the trust imposed on them. Even if this section has not been repealed, there is still no reason why the State could not prosecute a fiduciary under the general section applicable to all bailees as in this case. Commonwealth v. Cygan, 212 Pa.Super. 384, 243 A.2d 476 (1968); State v. Carr, 118 N.J.Law 233, 192 A. 36 (1937); Wallis v. State, 54 Ark. 611, 16 S.W. 821 (1891); Cf. Cooke v. State, 9 Md.App. 303, 263 A. 2d 620 (1970); Gordon v. State, 5 Md.App. 291, 246 A.2d 623 (1968).

Appellant points to the case of State v. Warwick, Del.Super., 9 Terry 568, 108 A.2d 85 (1954), as standing for the proposition that a trust relationship is never a bailment. The defendant in that case was the elected Prothonotary for New Castle County and was charged with embezzling—under "old" § 635—county funds which came into his official possession. The Court held that the statutory power of both the county and the Prothonotary defined the outer limits of their authority, and that the statutes did not authorize them to enter into the relationship of bailor-bailee. The Court did analogize the relationship to be that of debtor-creditor or ". . at most [a] . . . trust." 108 A.2d at 90. However, as the Court needed only to say what the relationship was *not*, a precise formulation of the relationship was not necessary. The analogizing by the Court is mere dicta and not controlling here.

### III.

Appellant next alleges two defects in the indictment: (1) that there is a variance between the indictment and the proof concerning what was embezzled; and (2) jurisdiction of the New Castle County Superior Court and Grand Jury was never properly alleged or proved.

■ Appellant first claims that, if his present conviction is sustained, he may later be placed in double jeopardy by being indicted for embezzlement of a check under the theory of State v. Kimball, Del. Gen.Sess., 7 Pennewill 146, 77 A. 412 (1909). In that case, an employee, in the normal course of his employer's business, had received a check which he was supposed to put in a specific bank account. The employee instead placed the check in his personal account. Originally, the employee was indicted for embezzlement of "money," and a directed verdict was granted in his favor. A later indictment for embezzlement of a "check" was held to charge a different offense and double jeopardy did not attach. The Court reasoned that there was a distinct difference between embezzlement of "money"—defined by the pertinent statute as being "coins or notes circulating as money"—and embezzlement of a "check" as charged in the second indictment.

■ Appellant has confused the holding of the *Kimball* case with the facts here. There is no claim by the State—nor could there be—that the deposit of the check from the District Court into appellant's "attorney's account" was in any way improper. Rather, the trial concerned the disappearance of this money after the rightful deposit.

■ Appellant then asserts a variance in proof in that the indictment alleges embezzlement of "lawful currency," whereas the proof of the State is only that "credits" in a banking account were depleted by

checks. Appellant cites 11 Del.C. § 3106 [6] as authority for stating that embezzlement of "lawful currency" is alleged in the indictment.

This reliance is misplaced. At no place in the indictment does any of the language of 11 Del.C. § 3106 appear; all of the amounts indicated therein are preceded by the following: " . . . the sum of $. . . . ." To what extent terminology of this kind may be limited by 11 Del. C. § 3106—if at all—in a case where actual currency is concerned is a decision we do not make here; we find only that the statute does not apply to this indictment.

For purposes of this case, the terminology of the indictment does indicate a fund of money in a general sense, and to that extent is sufficient to be read as applying to what appellant terms "bank credits." In fact, the great weight of authority in this country supports a construction which is even broader than we need give here: viz., that funds on deposit in a bank which can be paid out by checks signed by a defendant are money sufficiently within the defendant's control to render him liable for embezzlement of money, whether designated as "$," "money," or "funds" in an indictment. It does not matter that the checks are made payable to a third person or that no currency is handed over the counter to the defendant. State v. McCormick, 7 Ariz.App. 576, 442 P.2d 134, vacated on other grounds, 104 Ariz. 18, 448 P.2d 74 (1968) and cases cited therein at page 142; People v. Keller, 79 Cal.App. 612, 250 P. 585 (1926); Annot. 88 A.L.R.2d 688 (1963).

The only case *contra* to this authority is State v. Tauscher, 277 Or. 1, 360 P.2d 764 (1961). We agree with the comment made by the Arizona Court in State v. McCormick, *supra*: "We decline to accept the nitpicking distinctions resorted to by the Oregon court." 442 P.2d at 141. [7]

Summarizing, we hold that the indictment's specification of embezzlement of "sums of $. . . . ." is sufficiently comprehensive to cover a fund which is represented by credits in a bank.

█ Turning to the second alleged defect in the indictment, appellant claims that the jurisdiction of the New Castle County Grand Jury and Superior Court is not sufficiently alleged because there is no specific allegation of where the crime took place.

A fair reading of the indictment (See Fn. 1) shows that the first sentence states that between particular dates, " . . . in the County of New Castle . . .", appellant, as the attorney for particular persons, was charged with certain fiduciary duties and in the performance of those fiduciary duties did there receive a certain sum of money. The second sentence states what the particular nature of those fiduciary duties required him to do with this money. The third sentence states that appellant did not perform those duties.

Appellant would have us read the second and third sentences of the indictment without reference to the first sentence where the location is specified as New Castle County. This is manifestly unreasonable.

"The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Superior Court Criminal Rule 7(c), Del.C.Ann. Reading the indictment as a whole, we agree with the

---

6. 11 Del.C. § 3106 reads as follows:
   "§ 3106. Description of money.
   "When money, whether coins or paper money, is the subject of larceny, it shall be sufficient to describe the same in the indictment or information as 'money of the aggregate value of . . . . . . dollars.'
   "In any indictment or information the words 'money', 'dollars' or 'cents' shall be construed to mean lawful money of the United States."

7. Additionally, our own research indicates that the authority relied on by the Court in *Tauscher*—i. e., Hill v. State, 159 Tenn. 297, 17 S.W.2d 913 (1929)—may have been misplaced due to the unique wording of the Tennessee statutes.

conclusion of the trial Court that the indictment alleges that ". . . the [appellant] received certain sums of money in New Castle County and did embezzle, retain and appropriate to his own use the same funds of money belonging to others with intent to defraud."

■ Appellant's confusion appears to result from the indictment's specification of particular courts which had placed appellant under a fiduciary duty to act in a certain way. However, in an embezzlement case like this one, it is the existence of duties, and later disregard thereof, that must be shown; so long as it is lawful, the source of the duties is irrelevant.

■ Appellant also claims that the situs of the crime was not proved at trial. We disagree. The State showed that the fund was received and deposited in appellant's "attorney's" account in New Castle County; that the required trust fund was never created; and that by the end of the year, the "attorney's" account was wholly depleted. Appellant's own testimony was that he "decided . . . [to] . . . take a shot at gambling" . . . and . . . "go to Las Vegas . . ." There is no evidence to indicate that he initiated and consummated the defalcation at any place other than in New Castle County, where he has lived since 1944. It does not matter that the account may have been depleted by checks written outside of this state. Venue is proper because the embezzlement is culminated when the check clears through the account in the bank located in New Castle County. People v. Keller, 79 Cal. App. 612, 250 P. 585 (1926).

There was no conflict of evidence as to the situs of this crime. Compare State v. Curtin, Del.Gen.Sess., 5 Boyce 518, 95 A. 232 (1914), in which there was a direct conflict as to whether the embezzlement had been completely consummated before the defendant moved to the State of Delaware.

## IV.

■ Appellant next argues that the crime of embezzlement as defined by the Delaware cases requires a different state of mind of the embezzler than is required in other states. He contends that the law in Delaware is that the State must prove that the alleged embezzler intended to steal—i. e., permanently deprive the owner of his property—and that an intent to repay is a defense. Specifically, he points to the case of State v. Fitzpatrick, Del.Gen. Sess., 9 Houst. 385, 32 A. 1072 (1885), a larceny case, where the Court uses the words "fraudulently" and "feloniously" interchangeably. Other larceny cases defining the term "felonious" are also cited. Appellant admits that generally, in other jurisdictions, the prosecution need only show that an embezzler intended to take the property, and any intent to repay is irrelevant.

The answer to this argument is that *Fitzpatrick* is not on point. It was decided prior to the passage of any law dealing with embezzlement by bailees. The first act—which is the predecessor of "old" § 635—is found at 19 Laws of Delaware, Ch. 782, passed in 1893. The word "fraudulent" was used by the Legislature in that statute and has remained in the later embezzlement statutes without change.

■ The term "fraudulent" as used in "old" § 635 has developed a definite meaning in the cases dealing with embezzlement. As stated by Grubb, J., when charging a jury in 1901:

"Embezzlement is where one fraudulently appropriates the property of another . . . *In this offense, the intent to defraud (that is, the bad faith) is necessary to be shown before the defendant can be found guilty. The fraudulent intent* may be proved either by direct evidence, or by the evidence of circumstances from which the fraudulent intent may be inferred." (Emphasis added.)

State v. Davis, Del.Gen.Sess., 3 Pennewill 220, 50 A. 99 (1901). This language is common in most of the Delaware cases dealing with embezzlement by a bailee. State v. Sienkiewiez et al., Del.Gen.Sess., 4 Pennewill 59, 55 A. 346 (1902); State v. Seeney, Del.Gen.Sess., 5 Pennewill 142, 59 A. 48 (1904); State v. Brewington, Del. Gen.Sess., 2 Boyce 71, 78 A. 402 (1910) ("intent to defraud"); State v. Lyons, Del. Gen.Sess., 3 Boyce 72, 80 A. 976 (1911) ("intent to defraud"); Cf. State v. Larmer, Del.Gen.Sess., 7 Boyce 279, 105 A. 789 (1918).

In State v. Brewington, *supra,* Judge Woolley specifically noted that the old requirement of finding a "felonious intent" was one of the "gaps" in the law of larceny that the General Assembly had attempted to cure in 1893 by the specific use of the word "fraudulent" in the embezzlement statute.

It appears, therefore, that in comparison to cases which deal with larceny and the felonious intent therein involved, the intent element of embezzlement is quite different —i. e., a finding of "bad faith" or "intent to defraud."

In our opinion, the instructions by the Court below on intent correctly reflect the law of this state.[8] The issue was one for the jury.

### V.

Lastly, appellant argues that because of the publicity given to his disbarment proceedings and indictment in the news media of Wilmington, it was impossible for him to get a fair trial.

As proof of this prejudicial publicity, appellant has appended to his brief the following items—taken from the morning and evening Wilmington newspapers of general circulation in the State—: (a) seven

news stories about appellant's attempted resignation and disbarment; (b) two news stories dealing with payments made from the Clients' Security Trust Fund of the Bar of Delaware because of appellant's defalcations; (c) six news stories dealing with various pretrial proceedings in this case; (d) two "human interest" stories based on the plight of a mortgagor whose property was foreclosed on due to the alleged failure of appellant to make certain disbursements of money after a real estate settlement; (e) one editorial concerning the inadequacy of the Clients' Security Trust Fund; (f) two letters to the editor, one accusing the Bar Association of knowing of appellant's questionable activities long before his attempted resignation and the second demanding that attorneys be bonded. The morning and evening papers in which these items appeared are both printed by the same company. These twenty items appeared between September 28, 1968, and March 29, 1969.

Also appended to appellant's brief are affidavits of twenty-three representative citizens of New Castle County, in which these persons declare that the general community feeling is that appellant is guilty and could not receive a fair trial. All of these affidavits are dated in April, 1969; the trial took place in December, 1970.

We do not find it necessary to discuss the items from the news media or consider what weight should be given to the affidavits. All of these items are dated over 1½ *years* before appellant's trial. Even a cursory examination of the *voir dire* statements of the few members of the jury panel who had prior knowledge of the case reveals that whatever public prejudice may have existed because of the items in the news media from October, 1968, to April, 1969, any public bias had considerably staled by the time of appellant's trial.

---

8. The charge to the jury included this language:
"In this offense, the intent to defraud the owner of the money, that is, the bad faith, is necessary to be shown before the defendant can be found guilty."

Although caused by the nature of the litigation in this case, and not by deliberate order of the trial Judge, the delay in bringing appellant to trial meets the very standard set forth by the United States Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966):

> ". . . [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates . . ." 384 U.S. at 363, 86 S.Ct. at 1522.

Rideau v. State of Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) is not pertinent. In that case, the defendant's trial followed by less than two months the original crime and the prejudicial news coverage given the defendant. Clearly that is not the case here.

The judgment is affirmed.