KOGAN, Justice,
concurring in part, dissenting in part.
A defendant is tried based solely on an invalid criminal statute. On appeal, it would seem self-evident that the conviction must be reversed, if only because the entire basis of the crime — an unconstitutional statute — no longer exists under the law. Yet, the majority today holds exactly the opposite. Under the majority’s analysis, the appellate courts of this state now have authority to reach into the statutory boneyard, “revive” a dead letter, substitute the “revived” law for an invalid statute, and then reread the entire record as though the trial had been conducted under a superseded criminal statute not even mentioned by the trial court.
I find this holding a clear violation of the due process clause of the Fourteenth Amendment for two separate reasons. First, the concept of “notice” about prohibited conduct is at the very heart of due process, Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); and it is clearly unreasonable to think, as the majority tacitly does, that the general public has “notice” of a criminal statute that the legislature has repealed and thereby removed from the statute books. Who can have notice of what legally does not exist?
Second, due process is equally violated because under the majority’s approach, defendants effectively may be convicted based on a statute they have had no opportunity whatsoever to defend against. To my mind this is an outrageous encroachment upon the due-process right to a fair trial. It is little better than changing the rules after the proceedings have ended. And this dubious result is achieved through a kind of judicial alchemy that transforms glaring defects into constitutional rectitude.
While I concede that the majority finds support in case law from other states, I also find that this body of precedent has very weak support in the federal decisional law. None of the federal cases cited by the majority involved an alleged “revival” of a criminal statute. This necessarily means that none of the federal opinions actually have addressed the serious due process concerns unique to the criminal context. State court after state court has repeatedly cited to these federal civil cases, typically to dicta, without noting the obvious noncriminal character of the decisions. And then these same state courts, like the majority today, have proceeded to distill the rule of law from these cases and infuse it into the alien context of criminal law. E.g., Clark v. State, 287 A.2d 660, 664 (Del.1972) (citing Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886)).
In addition, the bulk of the cases cited by the majority clearly have muddled two distinct concepts: that of an enactment entirely “void” because of improper passage, and that of a statute partly or wholly “voidable” because of an alleged constitutional violation. The majority recognizes this distinction, but fails — as so many other jurisdictions have failed — to see how earlier “precedents” utterly confused the two concepts. For example, the majority relies in part on State v. Driver, 598 S.W.2d 774 (Tenn.1980), which does in fact state that an unconstitutional act does not repeal any valid law it purported to supersede. Id. at 776.
*998 Yet the majority neglects to note how the Tennessee Court came by this rule. As authority, the Driver Court relied upon State v. Dixon, 530 S.W.2d 73 (Tenn.1975), which in turn relied on State v. Hailey, 505 S.W.2d 712 (Tenn.1974). The last case in this chain of citation is plain: The statute in Hailey failed solely because it had a defective title and thus had been “passed” contrary to the constitutionally required procedure in the state. Id. at 713-14. In sum, the law was void, not merely voidable. As a result, the imprecision in reading its own earlier precedents led the Tennessee Court to announce a rule of law the precedents do not actually support. And this rule was announced without any consideration of the distinct due process issues arising in the criminal context.
The majority further relies on our own decision in Waldrup v. Dugger, 562 So.2d 687 (Fla.1990), of which I was the author. Again, the issue in Waldrup was not the revival of a penal statute. Quite the contrary, the Court was confronted with the admittedly rare situation in which a serious ex post facto problem would have existed either if the amended statute were enforced as written or if that statute were stricken entirely. Quite simply, we had no choice in Waldrup but to revive a portion of the superseded statute, because this was the only means of honoring the federal guarantee against ex post facto laws. It is ironic that, while Waldrup applied a revival concept to honor the liberty interests of individuals, the majority now cites that opinion as authority to take liberty interests away.
One of the cases cited by the majority— and it is the only one I have found anywhere in the United States to address the question — discusses the due process concerns of reviving a criminal statute. In Clark, the Delaware Court cites to civil revival cases then announces, first, that nothing prevents applying the rule in the criminal context, second, that the question is “solely a matter of state law,” and third, that there is no due process notice violation. Clark, 287 A.2d at 664. As reason for this‘last holding, the Clark Court simply says:
As a citizen of this state, appellant is presumed to know the statutes and existing rales of law of this state, and we find no evidence which would excuse ignorance of their status.
Id. This last statement begs the question. It also corrupts the meaning of the word “existing,” and effectively imposes a duty of clairvoyance on anyone who may be tried under an unconstitutional statute. Likewise, it is plainly wrong to say that due process is solely a state-law concern: The Fourteenth Amendment clearly stands for the opposite proposition.
The Delaware Court’s reasoning is only further undermined by the startling decision it reached: The Court in Clark refused to actually address whether the criminal statute was unconstitutional, but then proceeded to uphold a sentence imposed under the predecessor statute that had been “revived” by the trial court. The trial court had engaged in a revival analysis after finding the newer statute vague^ — a position the Delaware Supreme Court neither rejected nor accepted. In sum, Mr. Clark’s conviction was sustained through a kind of “what if’ reasoning, and those of us who read his case today can only guess under which statute he was branded a criminal.
Such absurdities are the result of a classic “slippery slope” in which a simple rule of law was improperly extended to the wrong context and then allowed to get utterly out of control. It is regrettable that Florida now chooses to slide down the slope with the others. Precedent is important in our system, but not when based on a foundation of fallacies that cannot be squared with constitutional right. Without doubt the precedent cited by the majority offers an expedient solution to a troubling problem: What happens when the legislature needlessly rewrites a perfectly valid criminal statute and thereby renders it unconstitutional? The “gut feeling” of many of us only naturally is to find some way to mend the breach, to avoid letting a lapse in draftsmanship save the guilty from punishment.
Yet, our system of justice is built on the rule of law, not a rule of expedience. A rule of law requires that laws be written and adopted properly, so that all may know what the law proscribes. It is not this Court’s job *999 to serve as master editor of statutes, nor should we presume to hide legislative failures behind a mask of legal fictions. The amendment to the juvenile escape statute was ill considered and poorly researched, and it is the legislature’s fault that the statute now fails. Yet, concealing this error behind some concept of “revival” is nothing more than a pretty way to hide an ugly erosion of the basic guarantees afforded to every American. Due process means the right of notice and the right to defend against a specific charge arising from a specific criminal statute. U.S. Const., amend. XIV. The majority opinion does violence to that right.
It perhaps deserves emphasis that the focal point of this case is the Fourteenth Amendment and what I believe to be a serious infringement of its guarantee of due process. To my mind, no person should be made to fear prosecution under a law that on its face has been repealed or otherwise displaced. If a properly approved statute says the earlier criminal law has been displaced, then the notice requirements arising from the Fourteenth Amendment ought to create a broad right for people to rely upon that statement. Any other rule would charge every person, not merely with a duty to know the law, but with a “duty” to foresee what a court has not yet done.
In the past, the United States Supreme Court obviously has chosen to ignore what the states have done in the name of “statutory revival.” This is a choice wholly within that Court’s discretion. I for one would hope that if the Supreme Court sees the due process problems I do, it will accept jurisdiction in one of these cases and clarify the law. The fact that so many states are engaging in a revival analysis for criminal statutes only underscores the urgent need for guidance from the nation’s highest court, if in fact that analysis is wrong.
While I fully concur with Part I of the majority opinion, I respectfully dissent from Part II. I would hold that no revival of the prior statute is possible and that B.H.’s adjudication accordingly should be reversed.
SHAW, J., concurs.
HARDING, Justice,